(No. 55436.– )

THE PEOPLE *ex rel.* THE DIRECTOR OF PUBLIC HEALTH *et al.,* Plaintiffs, v. HORACE L. CALVO, Judge, *et al.,* Defendants.

*Opinion filed January 21, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield (Jon E. Tweedt, Assistant Attorney General, of counsel), for plaintiffs.

Don W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Stephen E. Norris, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for defendants.

Harry L. Kinser, of McLaughlin, Kinser & Bryant, of Chicago, and Kenneth C. Robbins, William C. Kennedy, and Jeffrey W. Maysent, of Oak Brook, for *amici curiae* Illinois Hospital Association and Illinois State Medical Society.

JUSTICE SIMON delivered the opinion of the court:

We are asked here to overturn an order of the circuit court of Madison County compelling the production of certain Department of Public Health (Department) reports relating to the control of venereal disease. The State's Attorney argued before the circuit court that the production of the documents was necessary in order to uncover evidence against an employee of the Department, since discharged, who had been indicted for sexual misconduct with three women he counseled in the course of his duties with the Department's sexually transmitted disease program. The Department, relying upon "An Act in relation to communicable disease reports" (Ill. Rev. Stat. 1979, ch. 126, par. 21), claimed privilege and moved to quash the subpoenas. When the circuit court denied the motion, the Department moved under our Rule 381 (73 Ill. 2d R. 381) for leave to file this original action in this court seeking a writ of *mandamus* or prohibition directing the circuit court judge to vacate his order. We allowed the motion.

The subpoenaed documents are reports of individual cases of venereal disease. Physicians, clinics and hospitals having knowledge of a case of venereal disease are required by the Department rules to report it within 24 hours of its discovery. The Department may then institute a number of control measures, including treatment not only of the person diagnosed as having the disease but also those who have had contact with him or her, and the quarantine of any person having or exposed to venereal disease who refuses to submit to treatment. The State's Attorney is seeking records concerning persons the former employee counseled. The records include the names and addresses of persons affected, interviews conducted with them, and details of the investigation conducted by the Department on the basis of the physician's original report.

The State's Attorney obtained two indictments against

the former employee charging sexual misconduct. The trial of three of the five counts of the first indictment was conducted without the information the State's Attorney now requests. Shortly after the employee was acquitted of those counts, the State's Attorney caused the subpoenas in question to be issued. He has represented to this court, as he did to the trial judge, that the subpoenaed documents may lead the prosecution to other women the employee molested who would be willing to testify against him in the trial of the remaining charges to establish a *modus operandi.* He does not claim, however, to have any present information regarding additional victims.

The statute on which the Department relies (Ill. Rev. Stat. 1979, ch. 126, par. 21) provides:

"Whenever any statute of this State *** or any rule of an administrative agency adopted pursuant to statute requires medical practitioners or other persons to report cases of communicable diseases, including venereal diseases, to any governmental agency or officer, such reports shall be confidential, and any medical practitioner or other person making such report in good faith shall be immune from suit for slander or libel based upon any statements contained in such report.

The identity of any individual contained in a report of a *** venereal disease or *** an investigation conducted pursuant to a report of a *** venereal disease *** shall be confidential and the identity of any person named therein shall not be disclosed publicly or in any action of any kind in any court or before any tribunal, board or agency."

The purpose of this statute is not only to encourage those with venereal diseases to submit themselves for treatment, but also to permit public health authorities to alert others who may have been exposed to these diseases to their own need for treatment. Without an assurance of confidentiality, fear of social embarrassment resulting from

disclosure of their identities and physical conditions might cause individuals with such a disease to shun treatment, while at the same time others to whom they may have transmitted the disease might remain unaware that they are in need of treatment. And, of course, without such assurance, physicians and hospitals might be reluctant to file the reports required of them. The statute represents recognition by the legislature that protection from venereal diseases depends in large part on the willingness of those suffering from such disease to seek out treatment and to identify those with whom they may have had contact, as well as the cooperation of physicians and hospitals in reporting cases. There is thus strong public policy in favor of preserving the confidentiality which the statute contemplates.

The circuit court judge, obviously concerned about disregarding the statute's requirement of confidentiality, imposed safeguards which he felt would accomplish the objectives of the statute. Thus, although the subpoenas called for production of records before the circuit court to be used as evidence in the pending criminal case described by name and number in the subpoenas, the circuit court judge, in upholding the subpoenas, included in his order directions that the records be maintained in the strictest confidence. He further ordered that the disclosure of information contained in the reports be limited to the State's Attorney or his assistants or investigators assigned to the pending criminal case and to a grand jury.

The State's Attorney contends that the restrictions imposed by the circuit court circumvent the harm that would result from breach of the confidentiality requirements of the statute, and under these circumstances there is no need to apply the statute. He argues: the statute by its terms does not include grand jury proceedings; the statutory reference to actions of "any kind in any court or before any tribunal, board or agency" applies only to adjudicatory proceedings and a grand jury investigation is not that kind of proceeding;

and the statute is directed against public disclosure and this would not apply to a grand jury proceeding because of the secrecy with which it is cloaked. The State's Attorney's argument ignores, however, that the subpoenas called for production of the records at the criminal trial, clearly the type of situation covered by the statute. Whether the circuit court judge had authority to sanitize the production requests by eliminating commands of the subpoenas which obviously brought them into collision with the statute is questionable. But, even the restrictions imposed by the circuit court in an effort to rescue the requests from the strictures of the statute fall short of the hoped-for result.

The statute is intended to have a salutary effect, and the meaning the State's Attorney ascribes to it is too restrictive to accomplish the protection it was designed to afford. We interpret the statute to apply to any type of proceeding authorized by law, and a grand jury inquiry fits that category. More specifically, in keeping with the broad purposes of the statute, a grand jury qualifies as a tribunal. (See *State v. Deets* (Iowa 1972), 195 N.W.2d 118, 121.) The statute prohibits two types of disclosure. One is public disclosure; the other is disclosure in "any action of any kind." Thus, disclosure to a grand jury is prohibited even though what the grand jurors see and hear may not be available, at least immediately, for public consumption. Even adding to the traditional secrecy of grand jury proceedings the restrictions imposed by the circuit court on the use of the names and records does not satisfy the statute or render it inapplicable. The restrictions do not guarantee that some of the personnel in the State's Attorney's office or the grand jurors may not be acquainted with persons whose names might be exposed, thus causing embarrassment to those persons. Besides, the legislative history clearly establishes that "the identity of individuals contained in such reports will be confidential and not subpoenaed in courts of law." (Remarks of Rep. Holewinski, May 12, 1975, House

Debate on House Bill No. 796, at 131.) The records at issue here were subpoenaed by a court of law to be produced and used in the court in a pending criminal action.

The legislature has in some instances provided exceptions to confidentiality statutes when it intended to permit disclosure under specified circumstances. For example, the Mental Health and Developmental Disabilities Confidentiality Act allows a mental health facility director to report a violation of criminal law and the identity of individuals with personal knowledge of the facts to the appropriate law-enforcement agency (Ill. Rev. Stat. 1979, ch. 91½, par. 812). And, the Illinois statute defining the physician-patient privilege expressly permits disclosure by the physician in criminal actions involving specified charges.

We need not decide in this case whether the policy which the statute serves is so strong that it would survive a due process challenge in an appropriate case, for the State cannot raise that type of challenge.

The State's Attorney relies on *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090, and *People ex rel. Illinois Judicial Inquiry Board v. Hartel* (1978), 72 Ill. 2d 225, as authority for piercing the confidentiality requirements of the statute. Neither case is a compelling precedent here.

*Nixon* involved an *implied* privilege, based solely on a broad, generalized claim of a public interest in confidentiality. The court held that while the executive department might have need for a degree of confidentiality to perform its functions under article II of the United States Constitution, an absolute, unqualified privilege would too severely impede the functions of the judicial branch under article III, and so should not be read into the Constitution as a necessary feature of a workable government. The case might be relevant if this court were simply being called upon to weigh the State's need for evidence against the Department's need for confidentiality in order to discharge

its responsibility for safeguarding the public health. But, the Department's position here is supported by an *express* statutory privilege. The confrontation between confidentiality and other values was staged in the General Assembly, and confidentiality won, at least for cases as routine as this one. Nothing in *Nixon* suggests that the court would have disregarded a plain constitutional or statutory grant of a privilege. In fact, to throw over any clear, well-established privilege, whatever its source, for the sake of the highly speculative interest the State's Attorney here asserts would amount to declaring that henceforth there shall be no reliable privileges, of any sort, recognized by the criminal justice system. *Nixon* does not say that, and it is not a sound position.

Neither is *Hartel* relevant here. In *Hartel,* a defendant was seeking possibly exculpatory information in the possession of a government agency investigating him. Here, the information is not sought by a criminal defendant to negate his guilt, but rather the prosecutor seeks the information hoping that it will lead to further evidence of guilt. While *Hartel* may hold that confidentiality can be breached where due process rights require disclosure, the decision cannot be read as holding that the privilege of confidentiality must give way because the State's Attorney seeks protected information in the hope it will lead him to other evidence.

*People v. Newman* (1973), 32 N.Y.2d 379, 298 N.E.2d 651, 345 N.Y.S.2d 502, where a prosecutor's need for information in connection with a criminal investigation was subordinated to a public policy protecting confidentiality, clearly supports the Department's position. In the course of a homicide investigation, the director of a methadone program was subpoenaed to produce before a grand jury photographs of participants in the program. The purpose was to permit identification of the photographs by a witness to the killing who told the police she had seen the killer in a waiting room of a methadone maintenance treatment clinic

while she was a patient awaiting treatment. The New York court excused production on the basis of a confidentiality provision created by statute in favor of participants in the methadone program, the success of which, the court found, depended upon the ability to guarantee each patient his participation would not be disclosed.

Our decisions in *In re Roger B.* (1981), 84 Ill. 2d 323, and *People v. Bickham* (1982), 89 Ill. 2d 1, are also consistent with treating the records sought in this case as privileged. In the former case, we upheld against a constitutional challenge a cloak of confidentiality given by statute to adoption records, holding that the statute was justified by the legislative judgment that confidentiality protects the integrity of the adoption process, a result favored by public policy. In *Bickham* we held that the statute providing for the physician-patient privilege in Illinois shielded a doctor's records from the State's demand for production in connection with a criminal investigation. In reaching that conclusion we regarded the public policy recognized by the legislature in adopting the statute, which assured patients of confidentiality in relationships with their physician, as superior to the requirements of the State's investigation.

For the reasons set forth above, we conclude that the showing the State's Attorney has made of need to obtain the privileged records is not sufficient to overcome the statutory privilege maintaining their confidentiality. The writ of *mandamus* directing the circuit court of Madison County to vacate its order denying the motion to quash the subpoenas should therefore issue and the subpoenas should be quashed.

*Writ awarded.*