(No. 55124.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. REGALADO FLORENDO, Appellant.

*Opinion filed January 24, 1983.—Rehearing*
*denied April 8, 1983.*

Sherman C. Magidson and Glenn E. Gutsche, of Chicago (Harry J. Busch and Mark W. Solock, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, and Michael E. Shabat, Joel A. Stein, and Gregory G. Thiess, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

On July 10, 1979, the circuit court of Cook County found defendant, Dr. Regalado Florendo, in contempt of court for failure to comply with a *subpoena duces tecum* issued by the March 1979 grand jury. The court ordered defendant incarcerated until he purged himself of contempt and then stayed the order pending appeal. The appellate court affirmed (95 Ill. App. 3d 601), and we granted the defendant leave to appeal.

The primary issue for review is whether disclosure of a patient's identity, pursuant to a grand jury subpoena, violates the physician-patient privilege.

On February 21, 1979, the grand jury issued a subpoena requesting that defendant, as president of the Michigan Avenue Medical Center (Medical Center), produce medical, billing and receipt records for 34 listed "case numbers" and 13 named individuals. The information sought concerned public-aid-recipient patients of defendant's clinic. Pursuant to defendant's motion to quash, the trial court limited the scope of the subpoena. The court required only that defendant turn over to the grand jury photocopies of the patients' identification cards, thereby disclosing their names. Defendant failed to do so, and the State petitioned for a rule to show cause why he should not be held in contempt. Defendant filed a motion to strike the State's petition, and a hearing was held thereon. Subsequently, the trial court denied defendant's motion and issued the following "impounding" order:

"[T]hat transcripts of all testimony given in respect to [the subpoena] be impounded by this Court until further order.

It is further ordered that all documents subpoenaed by the [grand jury] and the contents thereof not be released or revealed to anyone other than the Grand Jury.

It is further ordered that all witnesses disclosed by virtue of testimony before or delivery of documents to the Grand Jury are not to be inquired of other than before the Grand Jury unless there is a specific and full waiver of the physician-patient privilege by the witness."

In affirming the trial court's ruling, the appellate court concluded that "the public's interest in maintaining the power of the grand jury" outweighed the patients' interest in avoiding revelation of their identities. (95 Ill. App. 3d 601, 605.) The court rejected defendant's arguments that disclosure of the women's names violated section 5.1 of

"An Act in regard to evidence and depositions" (Act) (Ill. Rev. Stat. 1979, ch. 51, par. 5.1) and the Illinois Abortion Law of 1975 (Ill. Rev. Stat. 1979, ch. 38, par. 81—21 *et seq.*).

Section 5.1 of the Act, commonly referred to as the physician-patient privilege, provides: "No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, *necessary to enable him professionally to serve such patient ***.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 51, par. 5.1.) The statute then lists a number of exceptions to the privilege, none of which are applicable here.

The plain meaning of section 5.1 of the Act limits privileged information to that which is necessary to enable the physician to render professional services. Defendant concedes that a patient's identity is not required for treatment. He also agrees that the mere identification of a patient is not typically considered a privileged communication. However, he argues that, here, disclosure of the patients' names would inevitably associate them with the treatment received. It is asserted that the Medical Center renders only abortion-related services. Therefore, disclosing the women's identities necessarily reveals the privileged information that they received abortions. We recognize this possibility and must therefore determine whether, under the circumstances in this case, the privilege should be construed to extend to a patient's identity.

As noted by the appellate court, resolution of this issue depends upon a balancing of competing interests. On the one hand the patient has an interest, recognized by the legislature, "in maintaining confidentiality in his or her medical dealings with a physician." (*People v. Bickham* (1982), 89 Ill. 2d 1, 6.) However, the public also has an interest in maintaining the breadth of the grand jury's power to conduct investigations necessary to ferret out criminal activity. (*People v. Bickham* (1982), 89 Ill. 2d 1, 5-6; *People v. Dorr*

(1970), 47 Ill. 2d 458, 462, *cert. denied* (1971), 402 U.S. 929, 28 L. Ed. 2d 863, 91 S. Ct. 1527. See *United States v. Calandra* (1974), 414 U.S. 338, 344, 38 L. Ed. 2d 561, 569, 94 S. Ct. 613, 618; *Branzburg v. Hayes* (1972), 408 U.S. 665, 700, 33 L. Ed. 2d 626, 650, 92 S. Ct. 2646, 2666.) This power should be accorded "the broadest scope possible" consistent with constitutional limitations. (*People v. Dorr* (1970), 47 Ill. 2d 458, 462.) We believe that, under the circumstances of this case, the balance should be struck in favor of the public.

This holding does not, as defendant suggests, conflict with the recent decision in *People v. Bickham* (1982), 89 Ill. 2d 1. In *Bickham*, the grand jury issued two subpoenas requesting the production of medical records pertaining to 63 named patients of an abortion clinic. Subpoena No. 200 identified 62 patients, none of whom consented to disclosure of their records. Subpoena No. 208 sought the medical records of a deceased woman. The administratrix of her estate executed a waiver of the physician-patient privilege. The court held that, pursuant to this privilege, respondent was not compelled to comply with subpoena No. 200. However, the court required that the records sought pursuant to subpoena No. 208 be turned over to the grand jury, as there was a valid consent to their disclosure. (See Ill. Rev. Stat. 1979, ch. 51, par. 5.1(3).) In so concluding, this court stated:

> "We note that the grand jury has been supplied with the names of the 62 women whose records it is seeking. There has been no consent for disclosure of medical records by any of the 62 women, as there was by the personal representative of the estate of Sherry Emry. As the appellate court observed, if the State obtains expressed consent from these women, *whose identities it knows*, exception (3) to the physician-patient privilege would be applicable. Respondent then could be compelled to produce their medical records." (Emphasis added.) *People v. Bickham* (1982), 89 Ill. 2d 1, 6.

In contrast, the subpoena involved herein, as limited by the trial court, did not request the confidential medical records of the patients. These records, as indicated in *Bickham*, could only be obtained pursuant to the patient's consent. (Unless, of course, another exception to the physician-patient privilege is applicable.) Further, as the court emphasized in *Bickham*, the State was aware of the women's identities and yet failed to obtain consent for disclosure of the records. In the instant case, the patients' names were unknown. Consequently, it was impossible for the State to even attempt to obtain waivers of the privilege.

The tremendous burden this situation imposes upon the grand jury investigation is clear. Also evident is the enhanced opportunity for a physician to invoke the privilege in order to conceal his own misconduct. "[T]he privilege should not be used as a shield by the physician; rather, it is for the benefit of the patient." *People v. Bickham* (1982), 89 Ill. 2d 1, 6.

Defendant contends that other jurisdictions consider a patient's identity privileged where disclosure thereof inevitably reveals the treatment received. (*E.g., Rudnick v. Superior Court* (1974), 11 Cal. 3d 924, 523 P.2d 643, 114 Cal. Rptr. 603 (*en banc*); *Marcus v. Superior Court* (1971), 18 Cal. App. 3d 22, 95 Cal. Rptr. 545; *Osterman v. Ehrenworth* (1969), 106 N.J. Super. 515, 256 A.2d 123.) We find these cases distinguishable. Both *Marcus* and *Osterman* involved discovery proceedings in a medical malpractice action. Further, in these cases, information concerning the identity of other patients of the doctor *and* the nature of their treatment was sought.

The *Rudnick* court, in a footnote, did indicate that if "disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege." (11 Cal. 3d 924, 933-34 n.13, 523 P.2d 643, 651 n.13,

114 Cal. Rptr. 603, 611 n.13.) Again, at issue were discovery proceedings in connection with a civil trial. (See Annot., 74 A.L.R.3d 1055 (1976).) The public's interest in the investigation of criminal activities, previously related, is simply not present. Nor is the secrecy attendant to grand jury proceedings. For these reasons, we do not find relevant the cases cited by defendant.

Defendant further argues that disclosure of the information sought would impermissibly infringe on the women's constitutional right to privacy. We believe that any intrusion on their privacy is minimal. The only aspect of the subpoena, with which defendant must comply, is that which requested identification of the patients. As previously indicated, this information was subject to the court's impounding order, which prohibited revelation of the subpoenaed documents to anyone other than the grand jury. All witnesses whose identity was disclosed could not "be inquired of other than before the Grand Jury unless there is a specific and full waiver of the physician-patient privilege by the witness." In addition, the appellate court was informed, during oral argument, that the patients used funds of the Department of Public Aid to pay for their treatment. Consequently, their names must have already been revealed to that agency.

Finally, defendant briefly asserts that sections 10 and 11 of the Illinois Abortion Law of 1975 (Ill. Rev. Stat. 1979, ch. 38, pars. 81—30, 81—31) prohibit disclosure of an abortion patient's identity. Section 10 requires a report of each abortion performed to be made to the Department of Health. The report may not identify the patient by name. Section 11(c) provides:

> "Any hospital, licensed facility or physician who fails to submit a report to the Department * * * and any person who fails to maintain the confidentiality of any records or reports required under this Act is guilty of a Class B misdemeanor." Ill. Rev. Stat. 1979, ch. 38, par. 81—31(c).

We agree with the appellate court that sections 10 and

11 relate to reports and records which are required to be filed with the Department of Health. There is no indication that these statutory provisions are intended to apply to other matters, so as to extend the physician-patient privilege.

For the above-stated reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

If this appeal involved only a matter of judgment as to whether the balance should be struck in favor of a woman's interest in maintaining confidentiality in her medical dealings with her physician involving an abortion or the grand jury's power to acquire names of patients a physician treated, I would ordinarily choose to preserve confidentiality. Faced with a similar choice between protecting the identity of persons whose names were reported to the State Department of Public Health in connection with venereal disease control and assisting the prosecutor in investigating an employee of the Department who was charged criminally with taking indecent liberties with women whose names were reported to that Department, we recently opted in favor of not exposing the women's names even to a grand jury in *People ex rel. Department of Public Health v. Calvo* (1982), 89 Ill. 2d 130. There is no showing here of the purpose for which the grand jury needs the names it seeks or even of the general nature of the inquiry the grand jury may be pursuing. If disclosure of the names was needed to protect people from serious harm, my response might be different, but the record here reveals no such necessity.

There is more involved in this case than a simple choice between confidentiality and whether a grand jury investigation into an undisclosed area should be aided. Although the order of the circuit court limited the disclosure to be made to the grand jury to names of women, the women in-

volved may be apprehensive that members of the grand jury or court personnel serving the grand jury and having access to their names in that capacity may be their neighbors, acquaintances or prospective employers. (*People ex rel. Director of Public Health v. Calvo* (1982), 89 Ill. 2d 130, 134.) I disagree with the majority's contention that any intrusion on the privacy of women whose names surface before the grand jury would be minimal. Obviously the only reason the grand jury would need the names is so that the women could be contacted. There is no way of knowing where the grand jury investigation might lead and what impact it may have on the lives of the women whose names are furnished and their families. Consider the trauma a young, unmarried woman would suffer when she is called upon at her parents' or relatives' home by process servers seeking to subpoena her appearance before the grand jury for the purpose of asking her if she would be willing to waive her physician-patient privilege? Or, consider the case of a married woman whose husband does not know she had an abortion, but finds out when the process server appears at their home to summon her before the grand jury only for the purpose of inquiring whether she would be willing to waive her privilege. The consequences of the majority opinion can be catastrophic, uprooting life-styles and shattering relationships. And to what end, in view of the circuit court's order that the names were to be kept confidential unless the patient specifically and fully waived the privilege? Is it so that the grand jury will have the names of women who received abortions and can then contact them to ask if they wish to waive their physician-patient privilege? This is a strange way of investigating whether there have been criminal violations and in fact smacks more of harassment than an investigation carefully and professionally conducted and which the prosecuting authorities have reason to believe is likely to be productive.

The majority points out that public aid funds were used to pay for the treatment received by the women in question. It is highly discriminatory, in my judgment, to sanction production of the names on the ground that the women were public aid recipients, and I see no justification for divulging their names solely because public funds were used to pay for their abortions. There is nothing in the record to indicate that the women involved waived any privilege by having public aid pay for their treatment. How one standard of waiver for private patients and another standard for public aid recipients would be appropriate or justifiable I do not understand. The physician-patient privilege contemplates no such dichotomy.

I find extremely persuasive the defendant's argument that disclosing the names of his patients of necessity reveals the nature of the problem for which they consulted him because the only medical service he provides is the performance of abortions. Thus, by furnishing the patients' names, the defendant discloses that the patient had an abortion or at least consulted him regarding one. Even the majority acknowledges this possibility. This is the very type of information the statute is designed to preserve as confidential. As I view the statute, the information the defendant is being ordered to disclose imparts precisely the kind of information the statute is designed to guard.

I would not draw the distinction the majority does between this case and the wise decision in *People v. Bickham* (1982), 89 Ill. 2d 1.

The fact that the grand jury had the names in *Bickham* while it is trying to get the names here is not a substantial difference. In *Bickham* this court said, "[I]t is certainly reasonable to presume that the 62 women named in subpoena 200 obtained medical care with the expectation that their medical records would remain confidential." (89 Ill. 2d 1, 6.) It seems to me just as reasonable to presume that the women in this case expected that the fact that they

were treated at a medical center dealing only in abortions would be kept confidential.

The majority claims there is no provision in the statute establishing the physician-patient relationship which immunizes a patient's name, and that the defendant has conceded as much in his brief before this court. I do not believe that the defendant agrees with this conclusion; he merely concedes that *Geisberger v. Willuhn* (1979), 72 Ill. App. 3d 435, is such a holding, and urges us to apply the rule of that case differently in the context of a woman seeking an abortion.

The statute setting forth the physician-patient privilege in Illinois reads in pertinent part:

> "No physician *** shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, necessary to enable him professionally to serve such patient ***." (Ill. Rev. Stat. 1981, ch. 51, par. 5.1.)

The court in *Geisberger v. Willuhn* states that, to be eligible for the privilege, a piece of information "must have been necessary for the performance of a professional duty on the part of the physician *** to treat, prescribe or act for the patient." 72 Ill. App. 3d 435, 437.

I believe that it is unrealistic to conclude, as the majority does, that the names of defendant's patients were not necessary for the treatment he was rendering or to his ability to prescribe or act for his patients. If it became necessary during the abortion to transfer a patient to a hospital, how could that be accomplished if defendant did not know her name? If for some reason it was necessary to impart information about the patient's condition to the patient, how could that be done if the defendant did not have her name or at least her address or telephone number? A physician who performed a surgical procedure without knowing how to identify his patient for admission to a hospital, who to contact in case an emergency arose or how to contact the patient later if it were necessary to do so

would be guilty of extremely sloppy practice, if not malpractice. This is particularly true, I should think, in the case of a surgical procedure such as an abortion.

In my judgment the majority opinion will chill the exercise of the constitutional right recognized in *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, to seek abortions. Women may in many instances decide to forgo an abortion rather than risk the possibility that their names will be exposed to a grand jury in connection with seeking an abortion. The majority's decision directs the law of privilege and the right of privacy down a cruel and insensitive path because of its indifference to the havoc it may cause in the lives of women whose names it orders be revealed, while in this case what the disclosure will contribute to the cause of law enforcement is unclear at best.