604 N.E.2d 929 (1992)
152 Ill.2d 381
178 Ill.Dec. 406
In re MAY 1991 WILL COUNTY GRAND JURY (The People of the State of Illinois, Appellee and Cross-Appellant,
v.
Tony Marquez et al., Appellants and Cross-Appellees).
No. 72421.
Supreme Court of Illinois.
October 15, 1992.
*931 Joseph C. Polito, Joliet, for appellee Tony Marquez.
Gerald G. Kielian, Joliet, for appellant and cross-appellee John Romo.
Roland Burris, Atty. Gen., Springfield, and Edward A. Burmilla, Jr., State's Atty., Joliet, (Norbert J. Goetten, John X. Breslin and Gary F. Gnidovec, of the Office of the State's Attys. Appellate Prosecutor, Ottawa, of counsel), for the People.
Justice THOMAS J. MORAN delivered the opinion of the court:
A Will County grand jury subpoenaed the appellants, Tony Marquez and John Romo. The subpoenas required each man to appear in a lineup and to submit a blood standard and head and pubic hair samples to the grand jury. In addition, Marquez was ordered to submit a complete set of fingerprints and palm prints. No charges had been filed against either man. Appellants filed motions to quash the subpoenas. Following a hearing, the circuit court of Will County quashed the portions of the subpoenas which required the appellants to submit blood standards and hair pullings. The court ruled that those items are protected by the fourth amendment and are therefore beyond the scope of the grand jury's power. However, the court upheld the other portions of the subpoenas, finding that "fingerprints, palm prints, in-person lineups, head hair clippings and combings, and pubic hair clippings and combings are not subject to 4th Amendment protection, in that these items are exposed to the public." Marquez and Romo appealed the trial court's ruling. The appellate court affirmed those portions of the order which required the appellants to appear in an in-person lineup and to provide fingerprints and palm prints as well as head hair combings and clippings; the court reversed that portion of the trial court's order which required the appellants to provide pubic hair combings and clippings (216 Ill.App.3d 1033, 159 Ill.Dec. 853, 576 N.E.2d 522). One justice dissented from the portion of the decision which found that the taking of head hair samples comes within the public exposure exception.
*932 Marquez and Romo appealed that portion of the judgment requiring them to appear in a lineup and to submit to fingerprinting and the taking of hair samples. The State cross-appealed from the portion of the judgment which reversed the circuit court's order requiring that pubic hair samples be submitted. We granted Marquez and Romo's petition for leave to appeal (134 Ill.2d R. 315).
The issues presented for review are (1) whether the relevant statute and the Illinois Constitution impose limitations upon the grand jury's power to gather physical evidence through the subpoenaing of witnesses; (2) whether the appellate court erred in finding that head hair combings and clippings are not subject to constitutional protections; and (3) whether the appellate court erred in concluding that probable cause was needed before the grand jury could subpoena pubic hair samples from the appellants.

CONSTITUTIONAL AND STATUTORY LIMITATIONS
Appellants contend that section 112-4 of the Code of Criminal Procedure of 1963 (Ill.Rev.Stat.1989, ch. 38, par. 112-4) and the Illinois Constitution impose limitations upon the grand jury in the gathering of evidence. In 1965, subsection (a) of section 112-4 set forth:
"The Grand Jury shall hear all evidence presented by the State's Attorney." (Ill.Rev.Stat.1965, ch. 38, par. 112-4(a).)
Section 112-4 was amended in 1975, at which time an additional subsection was incorporated as section 112-4(b). Subsection (b) provided in pertinent part:
"The Grand Jury has the right to subpoena and question any person against whom the State's Attorney is seeking a Bill of Indictment." (Ill.Rev.Stat.1975, ch. 38, par. 112-4(b).)
Finally, in 1980, section 112-4 was amended to its present form, which expands subsection (b) in relevant part as follows:
"The Grand Jury has the right to subpoena and question any person against whom the State's Attorney is seeking a Bill of Indictment, or any other person, and to obtain and examine any documents or transcripts relevant to the matter being prosecuted by the State's Attorney." (Emphasis added.) Ill.Rev. Stat.1981, ch. 38, par. 112-4(b).
Appellants argue that, in amending section 112-4 in 1980, the legislature limited the grand jury to those subpoena powers specifically set out in subsection (b), that is, to the subpoenaing of witnesses to testify and to provide documents. Thus, according to appellants, the grand jury may not subpoena other evidence, such as hair samples, fingerprints, and in-person appearances in lineups.
Generally, as appellants point out, the expression of one thing in an enactment excludes all others, even where there are no negative words of prohibition. (City Savings Association v. International Guaranty & Insurance Co. (1959), 17 Ill.2d 609, 612, 162 N.E.2d 345.) However, that principle is not a rule of law; it is merely a rule of statutory construction used by courts in arriving at the intention of the legislature. Dick v. Roberts (1956), 8 Ill.2d 215, 219, 133 N.E.2d 305; see also Landis, A Note on Statutory Interpretation, 43 Harv.L.Rev. 886 (1930), reprinted in 2A N. Singer, Sutherland on Statutory Construction 507 (5th ed. 1992).
The State argues that the legislature intended to give broad investigative powers to the grand jury. According to the State, section 112-4(b) has always empowered the grand jury to subpoena evidence from any person. The State's position is supported by case law. Prior to the 1980 amendment to section 112-4 which specifically granted the grand jury authority to issue subpoenas duces tecum, this court was asked repeatedly to examine the validity of various grand jury subpoenas issued to obtain documents. (See, e.g., People v. Lurie (1968), 39 Ill.2d 331, 235 N.E.2d 637; People *933 v. Allen (1951), 410 Ill. 508, 103 N.E.2d 92; People v. Reynolds (1932), 350 Ill. 11, 182 N.E. 754.) In none of these cases did the court question the subpoena power of the grand jury. Instead, the court restricted its inquiry to whether the particular subpoenas were relevant, material or overbroad.
Before the legislature amended section 112-4 in 1980, this court also recognized the right of the grand jury to subpoena handwriting exemplars. (People ex rel. Hanrahan v. Power (1973), 54 Ill.2d 154, 295 N.E.2d 472.) The legislature did not subsequently enact legislation that would clearly preclude the grand jury from issuing such subpoenas.
A statute should not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction. (People v. Bernette (1964), 30 Ill.2d 359, 374, 197 N.E.2d 436.) The 1980 amendment to section 112-4 simply codified what Illinois courts had previously recognized in their decisions regarding grand jury subpoenas for documents. We do not believe that section 112-4, by its terms, excludes the right of the grand jury to demand physical evidence from witnesses, a right which this court had previously ratified in Power.
It is presumed that the General Assembly knows how courts have interpreted a particular statute. (Zimmerman Brush Co. v. Fair Employment Practices Comm'n (1980), 82 Ill.2d 99,104, 44 Ill.Dec. 308, 411 N.E.2d 277.) Subsequent to the 1980 amendment to section 112-4, at least one Illinois decision has supported the issuance of subpoenas for fingerprints. (In re Grand Jury Investigation of Swan (1981), 92 Ill.App.3d 856, 48 Ill.Dec. 70, 415 N.E.2d 1354.) We believe that, in failing to place specific limitations upon the subpoena power of the grand jury, and in subsequently failing to amend section 112-4, the legislature intended to confirm those powers of the grand jury recognized under the common law.
Grand jury investigations must be given the broadest scope possible, consistent with constitutional limitations. (People v. Dorr (1970), 47 Ill.2d 458, 462, 265 N.E.2d 601.) It is in the public's interest to maintain the breadth of the grand jury's power so that it may ferret out criminal activities. (People v. Florendo (1983), 95 Ill.2d 155, 158, 69 Ill.Dec. 65, 447 N.E.2d 282.) We conclude that section 112-4, in confirming the grand jury's power to subpoena any person, also gives the grand jury the right to demand that the person subpoenaed provide evidence within the limitations imposed by constitutional guarantees of individual rights.
The fourth amendment of the United States Constitution, applied to the States through the fourteenth amendment, provides in relevant part:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." (U.S. Const., amend. IV.)
The United States Supreme Court has applied a fourth amendment analysis to a number of situations in which physical evidence was demanded from citizens without a warrant. In Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the Court found that the involuntary taking of blood from an individual whom there was probable cause to suspect of drunken driving was both a seizure and a search within the meaning of the fourth amendment. However, the Court held that, due to exigent circumstances, such a warrantless invasion of the body was reasonable under the facts of the case.
In United States v. Dionisio (1973), 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67, the Court held that a grand jury subpoena of voice exemplars was not unreasonable under the fourth and fourteenth amendments. The Court's conclusion was premised on the proposition that a person has no expectation of privacy in those of his physical characteristics which are commonly exposed to the public. Thus, because a person's *934 voice, like his facial characteristics, is exposed to the public at large, the grand jury need not make a preliminary showing of reasonableness before demanding a voice exemplar. Based on its reasoning in Dionisio, the Court subsequently held that a grand jury subpoena of handwriting exemplars is not unreasonable under the fourth amendment. United States v. Mara (1973), 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99.
Following the guidelines set out in Dionisio and Mara, this court held in Power, 54 Ill.2d 154, 295 N.E.2d 472, that the fourth amendment does not require the State to make a showing of reasonableness before a witness can be compelled to produce handwriting exemplars. This court's ruling on the issue was based exclusively on the interpretation of the fourth amendment made by the Supreme Court. However, a State's constitutional protection may be greater than that of the comparable United States constitutional provision. (People v. Jackson (1983), 116 Ill.App.3d 430, 433, 72 Ill.Dec. 153, 452 N.E.2d 85, citing Cooper v. California (1967), 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.) Appellants assert that the Illinois Constitution offers greater protection against the invasion of an individual's privacy rights than does the Federal Constitution. We agree.
In 1870, the relevant clause of the Illinois Constitution echoed the words of the fourth amendment of the United States Constitution, providing that:
"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated * * *." (Ill. Const. 1870, art. II, § 6.)
However, a new constitution was adopted in 1970 and section 6 of article II was amended to provide as follows:
"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." (Emphasis added.) (Ill. Const. 1970, art. I, § 6.)
The constitutional commentary on section 6 points out:
"Section 6 expands upon the individual rights which were contained in Section 6 of Article II of the 1870 Constitution and the * * * United States Constitution. * * *
* * * * * *
The protection against `invasion of privacy' is new and is stated broadly. No definition of types of privacy is offered." (Ill.Ann.Stat., 1970 Const., art. I, § 6, Constitutional Commentary, at 317 (Smith-Hurd 1971).)
The commentary then quotes the Committee Report, which refers to concerns underlying the amendment of section 6:
"`It is probably * * * inevitable that infringements on individual privacy will increase as our society becomes more complex, * * * and as technological developments offer additional or more effective means by which privacy can be invaded. In the face of these conditions the Committee concluded that it was essential to the dignity and well being of the individual that every person be guaranteed a zone of privacy * * *.'" (Ill.Ann.Stat., 1970 Const., art. I, § 6, Constitutional Commentary, at 317-18 (Smith-Hurd 1971).)
Thus, the Illinois Constitution goes beyond Federal constitutional guarantees by expressly recognizing a zone of personal privacy. The protection of that privacy is stated broadly and without restrictions.
Even before the adoption of the 1970 Constitution, this court had protected individual privacy rights by demanding that a subpoena for books and records not be unreasonably broad or general in its terms (Lurie, 39 Ill.2d 331, 235 N.E.2d 637; Allen, 410 Ill. 508, 103 N.E.2d 92) and that the documents sought be relevant to the investigation (Reynolds, 350 Ill. 11, 182 *935 N.E. 754). A person has a reasonable expectation that his private records will not be exposed to public view. Similarly, a person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason. We believe that the individual's privacy interest in his physical person, as well as his privacy interest in his documents, must be protected.
Once a right to privacy is established, the court must determine whether a search and seizure is reasonable. The reasonableness of a seizure is determined by balancing the need for official intrusion against the constitutionally protected interest of the private citizen. (People v. Garman (1984), 123 Ill.App.3d 682, 79 Ill.Dec. 20, 463 N.E.2d 158.) Thus, it is incumbent on us to balance the interest of the individual in maintaining his privacy against the interest of the public in preserving the effectiveness of the grand jury.
The purpose of a grand jury investigation is both to exonerate individuals under suspicion of having committed a crime (People v. Rodgers (1982), 92 Ill.2d 283, 289, 65 Ill.Dec. 929, 442 N.E.2d 240) and to establish the probable cause necessary for the arrest of suspected felons (Phillips v. Graham (1981), 86 Ill.2d 274, 284, 56 Ill.Dec. 355, 427 N.E.2d 550). No citizen is immune from a grand jury subpoena. United States v. Calandra (1974), 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 570.
A specific charge need not be pending as a condition of the grand jury's right to issue subpoenas; such a requirement would unduly trammel its investigation. (Allen, 410 Ill. at 517,103 N.E.2d 92.) However, the grand jury's subpoena power is limited; it may not invade a valid privilege established by the Constitution, statutes, or the common law. (Calandra, 414 U.S. at 346, 94 S.Ct. at 619, 38 L.Ed.2d at 570.) When a grand jury investigation infringes upon a person's protected right to privacy, the reasonableness of that intrusion must be tested against the validity of the grand jury's subpoena. People v. I.W.I., Inc. (1988), 176 Ill.App.3d 951, 956-57, 126 Ill.Dec. 374, 531 N.E.2d 1001.
Because it is not necessary that specific charges be pending before the grand jury as a condition of its right to subpoena written materials, the usual trial standards do not apply to grand jury subpoenas duces tecum for documents; "the most that can be required as a standard of materiality is as precise a statement of the subject under investigation as the circumstances permit." (Allen, 410 Ill. at 517, 103 N.E.2d 92.) Nevertheless, this court has repeatedly emphasized that documents demanded by the grand jury be relevant to its investigation. (See, e.g., People ex rel. Fisher v. Carey (1979), 77 Ill.2d 259, 32 Ill.Dec. 904, 396 N.E.2d 17; Dorr, 47 Ill.2d 458, 265 N.E.2d 601; Reynolds, 350 Ill. 11, 182 N.E. 754.) Some quantum of relevance must also be established before a subpoena is issued for physical evidence. A brief statement of the nature of the investigation would satisfy that requirement. In the present case, the circuit court should at least have known whether the subpoenas were requested for a homicide, robbery, or rape investigation.
The grand jury is an integral part of the court, and the court has the inherent power to supervise and prevent perversion of the grand jury's process. (People v. Sears (1971), 49 Ill.2d 14, 35-36, 273 N.E.2d 380.) Without the necessity of presenting some degree of individualized suspicion to the court, it is conceivable that a grand jury investigating a rape allegedly committed by a man of Oriental appearance might subpoena physical evidence from all 50 Asian-American males in the local community, none of whom was suspect for reasons other than his race. Such a result would be an unreasonable invasion of the privacy right protected by the Illinois Constitution. (Ill. Const. 1970, art. I, § 6.) Thus, we hold that some showing of individualized suspicion as well as relevance *936 must be made before physical evidence of a noninvasive nature, such as an in-person appearance in a lineup or fingerprinting, is demanded of a witness. This may be done through affidavit by the State's Attorney.
Nothing in the record indicates that relevance and individualized suspicion were established before issuance of the subpoenas in this case. In its brief before this court, the State informs us that the investigation concerned a homicide, and that there was a relationship between the appellants, as well as a relationship between one of the appellants and the victim. This is not the proper stage of the proceedings at which to attempt such a showing. Lacking such information, the circuit court should have quashed the subpoenas.

HAIR SAMPLES
The State contends that the appellate court erred in concluding that probable cause was needed before the grand jury could subpoena pubic hair samples from Marquez and Romo. The appellate court found, under a fourth amendment analysis, that the demand for the pubic hair samples constituted a search and seizure under the fourth amendment and that, barring probable cause, such a subpoena was unreasonable. We agree with the appellate court.
The Supreme Court has stated that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." (Schmerber, 384 U.S. at 767, 86 S.Ct. at 1834, 16 L.Ed.2d at 917.) The Schmerber Court found that the withdrawal of blood from a drunken driving suspect constituted a search and seizure within the meaning of the fourth amendment. However, the Court concluded that, under the facts of that case, the search and seizure was reasonable because of exigent circumstances. Later, in Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 and Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99, the Court carved out another exception to the need for establishing probable cause before obtaining evidence from the person. In those cases, it determined that a person has a lesser expectation of privacy in those physical characteristics which he normally exposes to public view. Thus, the fourth amendment does not demand that the State's taking of voice and handwriting exemplars be supported by probable cause.
The Supreme Court has found that the fourth amendment's protection is less stringent where there is a lesser expectation of privacy or where the search involves a minimal intrusion on privacy. (Winston v. Lee (1985), 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662.) Conversely, however, the Court has stated:
"[T]he Fourth Amendment's command that searches be `reasonable' requires that when the State seeks to intrude upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search `reasonable.'" Winston, 470 U.S. at 767, 84 L.Ed.2d at 673, 105 S.Ct. at 1620.
Throughout history, the pubic area has been regarded as the most private part of the human body, one which is normally hidden from the view of others. A demand for pubic hair represents a considerable intrusion into personal privacy and is, without the justification of probable cause, an indignity to the individual subpoenaed. In the case before us, there is no indication that exigent circumstances dictated that the pubic hairs be taken before it was possible to obtain a warrant. Based on Schmerber, Mara, Dionisio, and Winston, it is our view that the fourth amendment provides protection from unreasonable demands for pubic hair, and that a subpoena for pubic hair samples is reasonable only when warranted by probable cause.
The State maintains, however, that Henry v. Ryan (N.D.Ill.1991), 775 F.Supp. 247, provides more appropriate authority in this case. Henry was subpoenaed to appear before the grand jury and to provide blood and saliva specimens needed in the investigation *937 of a homicide. Henry testified, but was jailed after refusing to provide the subpoenaed specimens. While in jail, Henry was stripped of his clothes and kept in an observation cell due to a health care evaluator's order that he be placed on suicide watch. After eight hours in the cell, Henry agreed to give the specimens. Nevertheless, even after providing the blood and saliva specimens, Henry was detained for some time, naked, in the cell. He had not been, and was not thereafter, charged with a crime. When Henry brought suit against the jail officials, the Federal district judge found that the subpoena for the specimens represented a search and seizure under the fourth amendment, and that such an intrusion must ordinarily be based on probable cause. However, the judge found it untenable to require probable cause for a grand jury subpoena, because the very purpose of a grand jury inquiry is to establish probable cause through the testimony and evidence of witnesses. Thus, he concluded that a grand jury subpoena for physical evidence protected by the fourth amendment need be based only on individualized suspicion. We believe, however, that to exempt the grand jury from the probable cause requirement in such a case would be to permit intrusions into areas of individual privacy which are protected by the Illinois Constitution.
Our appellate court has found, in Jackson, 116 Ill.App.3d 430, 72 Ill.Dec. 153, 452 N.E.2d 85, that article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6) assures citizens a right of privacy in their bank records. The Jackson court found, however, that a grand jury subpoena for records in the case before it was reasonable, because (1) the documents sought were relevant to the inquiry, and (2) the subpoena for the specified documents was not overly broad. If, under the Illinois Constitution, there is a right of privacy in bank records, then, a fortiori, there is a right of privacy in pubic hair. But where the privacy right is firmly established in history and engrained in individual consciousness, as is the case with pubic hair, more than mere relevancy is required to support issuance of a subpoena. We hold then, that, before a grand jury subpoena is issued for pubic hair standards, probable cause must be shown. The State's Attorney may procure the evidence through a search warrant, and the evidence may then be presented to the grand jury.
Marquez and Romo assert that the appellate court erred in upholding the judgment of the circuit court requiring them to submit head hair standards to the grand jury. In reaching its decision, the appellate court relied upon the reasoning of In re Grand Jury Proceedings (3d Cir.1982), 686 F.2d 135 (hereinafter Mills). Mills was a suspect in a grand jury investigation of an armed robbery. The grand jury ordered Mills to furnish samples of his facial and scalp hair, as well as to submit to measurement of his height and weight, so that his physical characteristics could be compared with evidence found at the scene of the crime. Mills refused to comply unless he was first served with a valid search warrant. A Federal district court found that the compelled production of Mills' head and facial hair was comparable to the seizure of a blood sample in Schmerber, and that probable cause was necessary for the compulsion of such samples. On appeal, the majority of the Federal court of appeals reversed, finding that the compulsion to provide head hairs should be likened instead to the demand for fingerprints, handwriting samples and voice exemplars, which the Supreme Court has held to be outside the ambit of fourth amendment protection.
In adopting the rationale of the Mills majority, the appellate court in this cause rejected the conclusions of the Fourth District in In re September 1981 Grand Jury (1982), 104 Ill.App.3d 94, 59 Ill.Dec. 839, 432 N.E.2d 625, whose reasoning appellants urge upon us. In September 1981 Grand Jury, the State's Attorney had filed a "Motion for Disclosure to Prosecution," demanding that the petitioner, against whom no charges had been filed, provide *938 head hair samples to the prosecution. The appellate court ruled that, absent a showing of probable cause, the petitioner was protected by the fourth amendment from complying with the State's demands. The court specifically found that head hair does not fall within the public exposure exception to fourth amendment protection. In reaching its conclusion, the court reasoned that, although the color and texture of hair are commonly exposed to public view, its chemical components, like those of blood, are not. The majority of the appellate court in the case before us differed with that conclusion, however, finding that hair samples are more similar to fingerprints, in which an individual has a lesser expectation of privacy than in his blood. According to the majority, hair is like fingerprints in that it is exposed to public view and may also be analyzed by scientific means. One justice dissented from that conclusion, stating that, under the principle of stare decisis, the court should have followed the precedent established by another district of the appellate court in September 1981 Grand Jury rather than that of the Federal appeals court in Mills.
Decisions of a United States court of appeals are not binding on a State court. (People v. Fields (1990), 135 Ill.2d 18, 72, 142 Ill.Dec. 200, 552 N.E.2d 791.) By the same token, one district of the State appellate court is not always bound to follow the decisions of other districts, although there may be compelling reasons to do so when dealing with similar facts and circumstances. (People v. Ward (1989), 192 Ill.App.3d 544, 554, 139 Ill.Dec. 564, 548 N.E.2d 1120.) Otherwise, such decisions have only persuasive value for the appellate court.
The State argues that September 1981 Grand Jury is neither on point nor persuasive, in that it was concerned with a subpoena issued by the State's Attorney rather than by the grand jury. Moreover, according to the State, the September 1981 Grand Jury court's finding that hair samples fall into a different category from fingerprints, voice and handwriting exemplars is erroneous. The State argues that each of these characteristics is both in the public view and is capable of being analyzed technologically.
It is indisputable that head hair is ordinarily visible to others. Further, cutting a person's hair is less intrusive than removing blood from his body. Nevertheless, we believe that the taking of head hair is more of an intrusion into individual privacy than is the direction to appear in a lineup or to provide fingerprints.
An individual has some expectation that members of the public will scrutinize his physical characteristics, noting his bodily structure, his facial features, and the color of his skin. He has a similar expectation that others will observe the color and texture of his uncovered hair. However, the individual does not ordinarily have the expectation that others will cut, pull or comb his hair without his permission, and thus he has a greater expectation of privacy in keeping his hair intact than he does in simply having it observed. Handwriting and voice exemplars, fingerprinting, and appearance in lineups leave the individual's body undisturbed. In contrast, hair must be separated from the body before technological analysis; its loss diminishes the body, albeit to a small degree. In this respect, it is comparable to blood rather than to fingerprints. Thus, we find that hair samples do not fall under the exception for readily observable physical characteristics at issue in Dionisio and Mara, and that a subpoena for their production, unsupported by probable cause, is an unreasonable violation of the right to privacy protected by the Illinois Constitution.
Moreover, we do not believe that the constitutional shield against unreasonable intrusions into individual privacy should be lowered to permit incursions by the grand jury. To remove the protection ensured by a requirement of probable cause would be to bring about results such as that in Henry, where a nonsuspect was forced to give blood and saliva specimens or remain, naked, in a jail cell. Thus, we hold that probable cause must be established *939 before the physical integrity of a grand jury witness is diminished by the pulling, cutting or combing of his hair to obtain subpoenaed samples. Marquez and Romo were not charged with having committed a crime, nor was there any testimony that they had done so. Consequently, the subpoenas for their hair samples were unreasonable and should not have been granted.
For the reasons stated above, we affirm that part of the appellate court's judgment holding that probable cause is required for the taking of pubic hairs. We reverse that part of the appellate court's judgment which would allow the grand jury to subpoena hair samples without establishing probable cause. We also reverse that part of the appellate court's judgment which would allow the issuance of grand jury subpoenas requiring the appearance of witnesses in lineups and the production of fingerprints and palm prints without a showing of relevance and individualized suspicion. The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.
Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.