125 N.J. Super. 115 (1973)
309 A.2d 3
IN THE MATTER OF THE FINGERPRINTING OF M.B. AND TWENTY-ONE OTHER JUVENILES.
Superior Court of New Jersey, Appellate Division.
Argued August 7, 1973.
Decided August 16, 1973.
*117 Before Judges CONFORD, LEONARD and CRAHAY.
Mr. David R. Arrajj, Assistant Deputy Public Defender, argued the cause for M.B. and 21 other juveniles, appellants (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Michael J. Mitzner, Assistant Prosecutor of Union County, argued the cause for respondent State of New *118 Jersey (Mr. Karl Asch, Prosecutor, attorney; Mr. Michael H. Kessler, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by CONFORD, P.J.A.D.
We have here for consideration the question of whether or to what extent the Fourth Amendment controls or affects compulsion by a court, at the instance of a law enforcement officer, of citizens to cooperate in yielding their fingerprints to the authorities in order to help solve a crime.
On July 10, 1973 Judge Weidenburner, on the filing of an affidavit by an Elizabeth police detective, and at the request of the Union County Prosecutor, issued an ex parte order directing that the male members of the 1973 8th grade class of the Martin Luther King, Jr. elementary school of Newark submit to fingerprinting at the Essex County Sheriff's office in Newark on any of six specified days beginning July 17, 1973, at any time from 9 A.M. to 12 noon. The order permitted the pupils to be accompanied by a parent, guardian or attorney and directed that the fingerprints should be used only in regard to the investigation of the death on June 24, 1973 of one John (Bliss) Galasso. It further specified that the prints should be destroyed upon the completion of the investigation.
A subsequent motion on behalf of some of the pupils for an order vacating or staying the order of July 10 was heard and denied by Judge Weidenburner. Proceedings in this court for stay and leave to appeal eventuated in an order of this court granting leave to appeal but denying a stay. The Supreme Court on petition thereafter stayed the fingerprint order and directed this court to hear the appeal immediately. Because of the intervening proceedings the trial judge entered another order on July 27, 1973 providing for extended dates for the fingerprinting. Motions before us by the pupils for stay, leave to appeal, etc., in reference to the latter order become academic in light of our determination on the merits of the primary order of July 10.
*119 At the argument of the appeal, in order to provide a fair opportunity for appellants, who are obviously minor youths, to contest the reasonableness of the order, this court directed limited disclosure to counsel for appellants of the contents of the affidavit on which the order issued, and granted them leave to file a supplemental brief as to the reasonableness of the order based thereon. We further directed that such disclosure be held in confidence by counsel. The limitation and direction were based on representations by the State that disclosure to potential suspects in the crime of any of the details of the affidavit would prejudice the ongoing investigation of the homicide involved. (Appellants' brief indicates they are aware this was a homicide). We have now concluded that there is no reasonable need for further confidentiality of the portions of the affidavit disclosed to counsel, a substantial part of which has already been reported by the press, and we therefore recite those facts herewith as basic to an understanding of our determination that the fingerprinting order is a reasonable and valid interference with the privacy of appellants, within the proscriptions of the Fourth Amendment.
The body of the victim of the homicide, who was a resident of Montclair, was found in a vacant lot in Elizabeth on June 24, 1973 at 11:40 A.M. A ring of the 1973 graduating class of the Martin Luther King, Jr. elementary school in Newark was found lying 44 feet from the body. The victim had the exclusive possession and use of a 1972 Chevrolet automobile which was next seen, after discovery of the body, on the morning of June 26, 1973 parked on a Newark street. The Newark police took possession of it on June 27, 1973, and it was thereupon examined by experts for latent fingerprints. A number of such prints were found both inside and outside of the car, none of which was found to match known fingerprints of the decedent.
Appellants, while conceding, on the basis of commentary by the Supreme Court in Davis v. Mississippi, 394 U.S. 721, *120 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), hereafter quoted, that fingerprinting is probably compellable in certain "narrowly defined circumstances" short of a showing of probable cause "in the traditional sense" (Id.), nevertheless argue that (1) it was requisite that the trial court afford them full disclosure of the police affidavit and an opportunity at an adversary hearing, both to challenge the veracity of the affidavit and to offer counter-evidence refuting the reasonableness of the proposal to fingerprint them, and (2) on the basis of the facts disclosed to counsel, recited above, the order was not reasonable. We find both of these contentions to lack merit.
In the Davis case, supra, the Supreme Court reversed a state rape conviction of a 14-year-old boy because his incriminating fingerprints, admitted in evidence, were taken by police in the course of an illegal detention of the boy. While holding that "[d]etentions for the sole purpose of obtaining fingerprints are * * * subject to the constraints of the Fourth Amendment" (394 U.S. at 727, 89 S.Ct. at 1397), the court went on to say (Id.):
* * * It is arguable, however, that because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass any individual, since the police need only one set of each person's prints. Furthermore, fingerprinting is an inherently more reliable and effective crime-solving tool than eye-witness identifications or confessions and is not subject to such abuses as the improper line-up and the "third degree." Finally, because there is no danger of destruction of fingerprints, the limited detention need not come unexpectedly or at an inconvenient time.
These presently significant observations were repeated by the court in the recent case of United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67, 77 (1973).
*121 We pause to reject the argument of the State that involuntary fingerprinting is wholly outside the constraints of reasonableness imposed by the Fourth Amendment, assertedly supported by the decisions in United States v. Dionisio, supra, and the companion case of United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). Dionisio reversed a holding of the Court of Appeals for the Seventh Circuit to the effect that a federal grand jury subpoena calling upon a witness to submit voice samples for comparison with voices recorded on a legally authorized wiretap in the course of a gambling investigation was invalid in the absence of a preliminary showing of reasonableness of the subpoena in an adversary proceeding. 442 F.2d 276. The Supreme Court, in reversing, held: (a) a grand jury subpoena was not a "seizure" in the Fourth Amendment sense, and (b) there is no protected privacy in one's voice, which is "repeatedly produced for others to hear" (410 U.S. at 14, 93 S.Ct. at 771, 35 L.Ed.2d at 79). Essentially the same rationale was applied in the Mara case, in relation to a grand jury subpoena for handwriting exemplars. Neither of the stated grounds of decision in Dionisio is pertinent here. Moreover, as noted above, the court there impliedly reaffirmed the expression in Davis, supra, that at least limited Fourth Amendment protection is to be accorded subjects of investigatory fingerprinting as a matter of general principle.
Appellants' contention that they should have been accorded notice and an adversary hearing in the Law Division before issuance of the order is partly mooted by the circumstance that their counsel has been apprised by us of the gravamen of the affidavit and given an opportunity to argue against the order's reasonableness based thereon, taken in the light of the consideration that we have concluded that the facts so disclosed do constitute a reasonable basis for enforcing the order (see infra). We reject the non-mooted argument that appellants have a right to contest reasonableness *122 by offering independent proof on the issue. Cf. State v. Petillo, 61 N.J. 165 (1972); State v. Carluccio, 61 N.J. 125 (1972). Even the decision on which they primarily rely, In re September 1971 Grand Jury, 454 F.2d 580 (7 Cir.1971), rev'd other grounds sub nom. United States v. Mara, supra, does not support that position. The case goes no further than to hold that full disclosure of a government affidavit offered to support a demand for enforcement of a grand jury subpoena for handwriting exemplars is necessary where the object of the subpoena charges unreasonableness (in which respect it was reversed by the Supreme Court). It does not extend to a right by him to offer counter-proof. In our view, the early stages of a criminal investigation are no appropriate occasion for adversarial "minitrials" on the justification for routine investigative steps. Cf. United States v. Dionisio, supra, 410 U.S. at 16, 93 S.Ct. at 773, 35 L.Ed.2d at 81.
Having decided, as stated above, that even on the contents of the limited disclosure now afforded appellants, and in light of the opportunity accorded counsel to contest reasonableness before us, enforcement of the order under appeal is reasonable, we have no occasion to render definitive procedural guidelines for such cases in general. But a few observations may be helpful on the subject of disclosure of the moving affidavit by the State.
The proceedings below were the functional equivalent of an application for, issuance, and challenge of the validity of a search warrant. In that light, it might be argued that since on a motion to suppress the person aggrieved by the search is accorded access to all proofs before the issuing magistrate, R. 3:5-6, the same access should be granted here. However, there is a material difference. In the conventional search warrant situation a search and seizure has already taken place and the movant reasonably believes the evidence will be used against him in a penal proceeding. R. 3:5-7. Typically, the State's investigation has, by the *123 time of the motion to suppress, been concluded and a charge filed. The situation has changed from the early investigational stage where there may be real need for confidentiality, to the general pretrial area where present policy is for liberal discovery on behalf of the accused. See R. 3:13-3.
In the present situation, by contrast, the investigation had barely begun when circumstances dictated the need for fingerprinting of the pupils. There was legitimate law enforcement requirement for a degree of confidentiality in the developing investigation. No specific individual had yet been charged with or suspected of the crime. We incline to the view that in such a situation as this the judge should make a discretionary determination as to that degree of disclosure of the facts to the subjects of the investigation as will afford them a fair opportunity to challenge reasonableness in advance of the fingerprinting, yet not unduly harm the State's investigative interests. This approach was that which guided us in providing for the limited disclosure we allowed at oral argument.
We have stated above that we find the order under review reasonable in a Fourth Amendment context. Appellants pose a number of factual hypotheses argued to be consistent with the evidence disclosed to counsel and with the innocence of all or many male members of the graduating class of the school involved. For example, the ring may have been lost or dropped where found long prior to the homicide; the fingerprints on the car may be those of members of decedent's family or his friends, and the removal of the vehicle may be unconnected with the homicide. We need not analyze the argument in detail. After it is given full weight, there remains a substantial basis to suspect that a member of the school class in question may have had some implication in or material knowledge of the homicide such that fingerprinting of all the male members of the class was reasonable, having in mind the protective provision of the order for destruction of the prints after completion of the investigation. *124 Under all the circumstances extant and the terms of the order below we find the existence of such "narrowly circumscribed procedures" as render the order reasonable within the view of the Fourth Amendment adumbrated in Davis, supra, 394 U.S. at 727, 728, 89 S.Ct. 1394, and which we herewith adopt for this court as eminently sound.
Appellants further argue that taking of the prints will violate N.J.S.A. 2A:4-21. We think not. The statute provides if a person between 17 and 18 years of age is arrested and charged with an offense which, if committed by an adult would be indictable, he may be fingerprinted; but that if the person is found not guilty or the charge is dismissed, the prints shall be destroyed. On its face the statute purports to deal with persons charged with offenses, not to negate the common-law right of law enforcement officials to employ investigative detectional techniques. Language cited to us from Oberg v. Department of Law & Public Safety, 41 N.J. Super. 256, 257 (J. & D.R. Ct. 1956), must be understood in the background of a charge rather than an investigative situation. Compare Roesch v. Ferber, 48 N.J. Super. 231 (App. Div. 1957). The public policy of destruction of fingerprints of a juvenile not found guilty or where the charge is dismissed, Id. at 238, does, of course, apply a fortiori where the juvenile is never charged, and required the protective feature of destruction here incorporated in the order.
Appellants alternatively ask for a prohibition of distribution by the prosecutor of prints to other law enforcement agencies and of interrogation of the children, and for the setting of a definite date for destruction of any prints taken. The order is herewith amended to prohibit distribution of the prints or copies thereof to any agency not within the jurisdiction of the New Jersey state courts. Distribution may be made to a New Jersey law enforcement agency if strictly necessary for investigative purposes, but in that event such agency will be under the same restraint as to distribution *125 and same directions for destruction as contained in the amended order, and it shall be served forthwith with copies of the order and this opinion.
We will not, however, prohibit interrogation of any of the children insofar as such course does not violate the state or federal statutes or constitutions. No such issues have been argued, and an order on the subject would be premature. The order affirmatively authorizes only the fingerprinting. As for the time of destruction of the prints, we will leave the order as it stands, subject to the right of any of the parties to apply to the trial court for more specific directions if necessary in the light of developments.
The order, as amended above, is affirmed, and the trial court, on application, may fix a new schedule of dates for taking the fingerprints. The existing stay is vacated. No costs.