*In re* SEPTEMBER 1981 GRAND JURY.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ROBERT L. COHN, Respondent-Appellant.)

Fourth District    No. 17676

Opinion filed February 18, 1982.

Robert Weiner, of Springfield (John S. Weiner, of counsel), for appellant.

J. William Roberts, State's Attorney, of Springfield (Stuart H. Shiffman, Assistant State's Attorney, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

This appeal presents an enigmatic question: to what extent may one who is a suspect only in a homicide case be required to provide the State with blood and hair samples prior to being charged with the offense?

On September 6, 1981, at about 11:45 p.m., the body of Jean Cohn, estranged wife of Robert Cohn, the appellant, was discovered in her automobile about 3½ blocks from her residence in Springfield. Death was caused by strangulation. The police went to the residence where they found the appellant tending the couple's children. Although they were apparently living apart, appellant would come to the home to care for the children while Jean worked at a Springfield hospital.

Upon being advised by the police of his wife's death, appellant stated that he had arrived at the residence at 9:53 p.m. and had remained there since that time. He further stated that the decedent had left for work at about 10:10 p.m. One of the officers observed that the appellant had some superficial scratches about his hands and that his shoes appeared to be damp and spotted with grass clippings. A witness who was at the residence next door stated to the police that he had seen appellant arrive in a pick-up truck at about 10:45 p.m.

During the morning hours appellant was taken to police headquarters. He was wearing a light green windbreaker jacket with a tan lining. The jacket had attached to it a red and white volunteer fire department patch. Fingernail scrapings from the body of the decedent revealed green, tan, red and white fibers. Also, the scrapings contained a quantity of blood and hair. No testing was done on any of these items because of the limited quantity found and the lack of samples for comparison.

While the record is sketchy on the point, it appears that appellant was not arrested or detained but released. It is established, and admitted by the State, that he has never been charged with the offense; no criminal information or complaint has ever been filed; no indictment has ever been handed down by a grand jury; no evidence has ever been presented to a grand jury. The record shows that a grand jury had been impaneled on September 17, 1981, but had been excused until October 22, 1981. Thus, at the time of the filing of the first motion, as described below, the grand jury was not even sitting, although the case was filed in the circuit court of Sangamon County under the caption "In re September 1981 Term Grand Jury." The additional caption "The People of the State of Illinois v. Robert L. Cohn" was added by appellant's counsel for the purposes of appeal as a method of designating the parties.

On October 19, 1981, the State's Attorney of Sangamon County filed in the circuit court of that county an instrument captioned as described above and entitled "Motion for Disclosure to Prosecution." The motion purported to sound under Supreme Court Rule 413 (73 Ill. 2d R. 413). It was served on the appellant who filed a special and limited appearance contesting the jurisdiction of the court. The basis was that no adversary proceedings were pending and that Rule 413 is limited by Supreme Court Rule 411 (73 Ill. 2d R. 411) providing that the disclosure rules apply only after an accused is charged with an offense. Over objection of the appellant the State was granted leave to file an amended motion. This was done on October 27, 1981. The amended motion still purported to sound under Rule 413 and was supported by an affidavit of a police officer. The affidavit recited essentially the facts as outlined above; *i.e.*, discovery of the body, appellant's statement of times, witness' statement of time,

presence of dampness and grass cuttings on appellant's shoes, presence of fibers, blood and hair under the fingernails, delay in testing.

Appellant's special and limited appearance stood to the amended motion and the trial court held a hearing on November 3, 1981. It over-ruled the special and limited appearance, found that it had jurisdiction and that probable cause existed for the taking of blood and hair samples from the appellant. It then ordered appellant to appear at a Springfield hospital for the purpose of taking of the samples under medical super-vision. .

Appellant appealed that order to this court on the same day, No-vember 3, 1981. The State filed a motion to dismiss the appeal for lack of an appealable order and that motion was allowed by this court. There-after, the State filed in the circuit court of Sangamon County a petition for rule to show cause against appellant for his refusal to submit to the taking of samples. A hearing was held on the petition on December 18, 1981, and on December 21, 1981, the trial court entered an order of contempt, requiring appellant to be jailed until he complied with the order. Notice of appeal was filed December 22, 1981, and on December 23, 1981, appel-lant filed a motion in this court for revocation of the circuit court's order or in the alternative for a stay pursuant to Supreme Court Rule 609(c) (73 Ill. 2d R. 609(c)). This court denied the revocation but allowed the stay conditioned on a bond and ordered an expedited briefing schedule.

The precise basis for the November 3 order is cloudy. It will be remembered that both the original motion and the amended motion were brought under Supreme Court Rule 413 and in theory the written orders emanating therefrom are likewise based on the rule. However, it appears from the record that both the trial judge and the State have retreated from that position. In making his ruling the trial judge stated:

"* * * It seems to me the question is at this point whether the affidavit is sufficient to support the sort of order that the State requests, whether that is done under Supreme Court Rule 413 or in effect is a request for a search warrant to allow the taking of blood, and after having reviewed the affidavit which has been filed and all the other documents which have been filed in this case, I am of the opinion and find at this time that the affidavit and the records in the case do support a finding of probable cause of the issuance of an order requiring the defendant or the focus of the investi-gation, Robert Cohn, to submit to blood and hair samples re-quested, whether that is in the nature of discovery under 413 or in the nature of a search warrant I think is immaterial."

The State's position is best summarized from a statement in its brief as follows:

"Whether by statute, or by the inherent power of the court, it is

clear that under certain limited conditions evidence may be obtained from an individual not yet under arrest or charged with an offense. Surely there are instances in which a strong showing of need can be made, especially when diligent investigation has not produced sufficient evidence to justify the arrest of a particular individual but yet has established the likelihood of substantial progress in solving the case if identification procedures are employed against a suspect or a group of suspects."

It would thus appear that the State has abandoned any claim under Rule 413, but rests on a perceived inherent power in a trial court to require the production of evidence by a suspect prior to his being charged. At oral argument the State conceded that there was no probable cause to charge the appellant, but insisted that there was "probable cause" to link him to the offense and that this was sufficient to confer jurisdiction upon the circuit court to require him to give the requested samples. Exactly what limits exist, if any, on this lesser variety of probable cause is not explained.

Appellant argues that no authority exists under the discovery rules until after one has been charged with an offense and that anything else is a violation of his rights under the fourth and fourteenth amendments to the United States Constitution and article I, section 6, Constitution of Illinois 1970, relating to search and seizure.

■■■ Two matters may be briefly disposed of. First, no authority existed for the order under Rule 413. The criminal discovery rules (73 Ill. 2d Rules 411-415) are expressly and unequivocally made applicable only after an accused has been charged with an offense. (Compare *People v. Santiago* (1977), 53 Ill. App. 3d 964, 369 N.E.2d 125.) Second, the State has argued that no search has yet taken place and therefore there has been no constitutional violation. The protection of the search and seizure provision of the United States and Illinois constitutions exist not only to redress past intrusions by way of the exclusionary rule, but also to prevent threatened intrusions at the investigatory stage. *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394.

The Supreme Court has grappled with the problem of the production of evidence by an accused at the investigatory stage. In *Davis*, reversing, the court indicated that the taking of fingerprints would probably offend the fourth amendment. Mr. Justice Harlan indicated it probably would not. The concern appeared to be more with the dragnet procedures used than with the actual taking of the prints. In *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, the court upheld the taking of blood without a warrant because of the exigent circumstances that the alcohol content would be metabolized with the passage of time. In *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000, the court upheld the taking of fingernail scrapings. The suspect had

voluntarily appeared at police headquarters concerning the strangulation death of his wife. He had what appeared to be dried blood on his fingers and attempted to rub off the substance. Again, as in *Schmerber*, the exigent circumstances allowed the taking. In *United States v. Dionisio* (1973), 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764, the court held that a witness under subpoena to appear before a grand jury and give a voice exemplar could be compelled to do so without constitutional infringement. The rationale was that a voice is a physical characteristic which is constantly exposed to the public and therefore not subject to fourth amendment protection. A similar result was reached in *United States v. Mara* (1973), 410 U.S. 19, 35 L. Ed. 2d 99, 93 S. Ct. 774, concerning handwriting and printing exemplars.

Thus far the court appears to have fashioned two exceptions to the fourth amendment protection: (1) exigent circumstances wherein destruction of the evidence is reasonably apparent, or (2) physical characteristics which may be observed by anyone without a search.

We need not tarry over the first of these in the instant case. It is admitted by the State that no exigent circumstances exist here. Six weeks elapsed from the discovery of the body to the filing of the first motion. This alone would negate any such contention. The State's case must then rest on the alternative exception: demonstration of observable physical characteristics.

Since the Supreme Court appears to be fashioning an *ad hoc* approach to the matter, it is difficult to say how far it may ultimately go. The division of the court over the matter of fingerprints in *Davis* demonstrates the difficulty in such line-drawing. It must be constantly borne in mind that we are dealing with a pre-arrest, pre-charge situation. The taking of specimens post-arrest, post-charge, or as incident to the lawful arrest, are of little assistance here.

■■ The rule, as developed thus far, appears to be that there is no intrusion, and hence no fourth amendment protection, into an individual's privacy when he is asked to expose to the authorities that which has been previously exposed to the public at large. (*Dionisio*.) This would include a voice exemplar (*Dionisio*), a handwriting exemplar (*Mara*), a lineup appearance (*In re Melvin* (1st Cir. 1977), 550 F.2d 674).

The converse must also be taken as doctrine: that which has not previously been exposed to the public is protected. While the color of one's hair may not be protected, its chemical characteristics are. Clearly the taking of samples of body fluids involves an invasive procedure to obtain something which has not been previously exposed. A peculiar gait, having been exposed to the public, would not be protected, but a physical examination to determine its cause would be. Examples can be endlessly cited.

■■ As applied to the case at bar, we believe that the taking of hair and blood samples is protected. Neither come within the public exposure exception.

Other jurisdictions have been called upon to deal with this situation, but each of them represents a different context, and the cases are not particularly helpful. In *State v. Grijalva* (1975), 111 Ariz. 476, 533 P.2d 533, the Arizona Supreme Court upheld against constitutional attack a State statute authorizing the temporary detention of an individual for the purpose of obtaining evidence of identifying physical characteristics. However, the statute required a magistrate to make a determination that the identification and detention were reasonable. No such statute exists in this State.

In *In re Fingerprinting of M. B.* (1973), 125 N.J. Super. 115, 309 A.2d 3, the New Jersey court permitted the fingerprinting of all male members of an eighth grade class in connection with a homicide investigation. The court held that the "proceedings below were the functional equivalent of an application for, issuance, and challenge of the validity of a search warrant." (125 N.J. Super. 115, 122, 309 A.2d 3, 6.) Similarly, in *People v. Marshall* (1976), 69 Mich. App. 288, 244 N.W.2d 451, blood and hair samples were taken from a suspect pursuant to a detention order. The Michigan court found constitutional problems and said, " * * * other than a search warrant * * *, there is no such 'animal' in this jurisdiction as a court order authorizing the detention of a suspect for the purpose of a search." (69 Mich. App. 288, 300, 244 N.W.2d 451, 457.) However, the court went on to find that the detention order was a search warrant.

The State urges us to follow the New Jersey and Michigan precedents and find that the underlying order was the equivalent of a search warrant. We are unable to do so.

Grounds for the issuance of a search warrant are set forth in section 108—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 108—3.) They require a written complaint stating facts sufficient to show probable cause. Even if the affidavit accompanying the amended motion can be construed as such a complaint, it falls far short of probable cause. It recites only that the appellant's shoes were wet and spotted with grass clippings, that he claimed not to have left the "residence" after arriving at 9:53 p.m., and that a neighbor observed him arrive at 10:45 p.m. While all this may affect the credibility of the appellant, it falls far short of connecting him with probable cause. No approximate time of death was stated, only the time of discovery of the body. It is not clear what is meant by "residence," whether it includes only the structure, or the yard, if any. It is axiomatic that probable cause necessarily encompasses something more than mere suspicion. *People v. Martin* (1979), 70 Ill. App. 3d 36, 388 N.E.2d 278.

The order of the circuit court of Sangamon County directing appellant to appear and give samples of his hair and blood is reversed; the order finding appellant in contempt for violation of that order is vacated; the cause is remanded to that court with directions to release the appellant and discharge his bond.

Reversed and remanded with directions.

MILLS and LONDRIGAN, JJ., concur.