In re MAY 1991 WILL COUNTY GRAND JURY (Tony Marquez *et al.*, Petitioners-Appellants, v. The People of the State of Illinois, Respondent-Appellee).

Third District   No. 3—91—0464

Opinion filed July 26, 1991.

STOUDER, P.J., concurring in part and dissenting in part.

Joseph C. Polito, Ltd., and Gerald G. Kielian, both of Joliet, for appellants.

Edward Burmila, Jr., State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

A grand jury in Will County, Illinois, subpoenaed the petitioners, Tony Marquez and John Romo. The subpoenas required both to appear in an in-person lineup, submit fingerprints, palm prints, a blood standard, and head and pubic hair samples to the grand jury. No charges have been filed against either man. The petitioners filed motions to quash the subpoenas. Following a hearing before the circuit court of Will County, the court quashed the subpoenas requiring the petitioners to submit blood standards, pubic hair pullings, and head hair pullings. The court ruled these items were the subject of fourth amendment protection and, absent a showing of probable cause, beyond the scope of the grand jury's subpoena power. The court upheld the subpoenas with regard to fingerprints, palm prints, in-person lineup, head hair clipping and combing, and pubic hair clipping and combing. The court ruled these items are not the subject of fourth amendment protections in that they are items routinely exposed to public view. The petitioners appeal the court's ruling. We affirm in part and reverse in part.

First, the petitioners argue that there is no showing that the subpoenas were issued at the direction of the grand jury. We dispose of this argument summarily. The petitioners assert they "believe" the subpoenas "may" have been issued at the direction of the State's Attorney and not by action of the grand jury. The burden of showing irregularity in grand jury proceedings rests upon the defendant and may not be based upon speculation. (*People v. Haag* (1979), 80 Ill. App. 3d 135, 399 N.E.2d 284.) Absent proof of irregularity, which is not demonstrated by this record, we decline to presume error in the issuance of the subpoenas.

The remainder of the petitioners' claims warrant careful consideration.

First, the petitioners contend the subpoenas are not authorized by applicable Illinois law. They argue (1) the Illinois Constitution provides that the legislature may limit the powers of the grand jury; (2) the legislature has limited the subpoena powers of the grand jury to oral testimony, documents, and transcripts; (3) hair, blood and the other evidence sought fall into none of the aforementioned categories; and (4) therefore, the subpoenas issued by the Will County grand jury exceed their lawful authority and should be quashed. Secondly, petitioners claim a fourth amendment protection from divulging these items absent a showing of

probable cause. Third, the petitioners assert the subpoenas violate their constitutional right to privacy under the Illinois State Constitution.

In order to fully understand the issues presented, a review of the powers of the grand jury is required.

The fifth amendment to the United States Constitution guarantees that no civilian be brought to trial by the United States for an infamous crime "unless on a presentment or indictment of a Grand Jury." (U.S. Const., amend. V.) This guarantee evolved from the English common law tradition of placing a body of citizens between the prosecutor and the accused. (*Wood v. Georgia* (1962), 370 U.S. 375, 392, 8 L. Ed. 2d 564, 581, 82 S. Ct. 1364, 1374.) The grand jury serves the dual function of protecting citizens from the overzealous prosecutor and providing an investigative body to root out law breakers. The right to a grand jury indictment, however, does not extend to defendants accused of State crimes. *Hurtado v. California* (1884), 110 U.S. 516, 28 L. Ed. 232, 4 S. Ct. 292.

In Illinois, our State Constitution provides for indictment by grand jury. Article I, section 7, of the Illinois Constitution provides that no person may be held to answer for a crime punishable by death or imprisonment unless brought by "indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." The Constitution also provides that the legislature "may abolish the grand jury or further limit its use." Ill. Const. 1970, art. I, §7.

In providing for the grand jury, the legislature has empowered the grand jury with broad investigative powers.

> "The Grand Jury has the right to subpoena and question any person against whom the State's Attorney is seeking a Bill of Indictment, or any other person, and to obtain and examine any documents or transcripts relevant to the matter being prosecuted by the State's Attorney." Ill. Rev. Stat. 1989, ch. 38, par. 112–4(b).

Upon a careful reading of both the State Constitution and the above-cited statute, we believe the defendants' argument regarding section 112–4(b) of the Criminal Code of 1961 is in error.

First, the Constitution provides the legislature may abolish the grand jury or "further limit its use." Although we express no opinion on the matter, even if the legislature has the authority to limit the investigative powers of the grand jury, the cited statute does not impose such a limitation. The statute provides that the grand jury has the right to subpoena any person *and* to subpoena any relevant documents or transcripts. Inherent in the grand jury's power to subpoena any person is the power to require that person to provide evidence as long as it is

done within Federal and State constitutional boundaries. The provision that the grand jury has the authority to subpoena documents or transcripts is in addition to, not a limitation on, the inherent powers of the grand jury.

For example, in *People ex rel. Hanrahan v. Power* (1973), 54 Ill. 2d 154, 295 N.E.2d 472, the Illinois Supreme Court implicitly rejected the restrictive interpretation the petitioners urge this court to accept. In *Hanrahan*, the trial court refused to issue a grand jury subpoena requiring an individual to submit handwriting exemplars to the grand jury. In response, the State filed a writ of *mandamus* asking the Illinois Supreme Court to order the subpoena issued. The court, citing *United States v. Dionisio* (1973), 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764, granted the *mandamus*. Clearly, had the grand jury been without the authority to obtain the exemplars, the court would not have granted the State's petition.

Likewise, in *In re Grand Jury Investigation* (1981), 92 Ill. App. 3d 856, 415 N.E.2d 1354, the trial court found the defendant guilty of contempt of court for refusing to obey a grand jury subpoena directing him to provide a set of fingerprint impressions. The court upheld the conviction and ruled that although considerations of due process apply to grand jury proceedings, the defendant had no right to refuse to comply even though he had provided the information to the grand jury previously. We agree.

Therefore, we hold that section 112—4(b) of the Criminal Code of 1961 does not impose a limitation on the inherent powers of the grand jury to subpoena witnesses and gather evidence.

Next, petitioners allege that the fourth amendment to the United States Constitution protects them from having to provide the evidentiary items requested in the subpoena in this case. In *United States v. Dionisio* (1973), 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764, a Federal grand jury subpoenaed approximately 20 persons to provide a voice exemplar for identification purposes. Dionisio objected. He claimed that the fourth amendment applied to grand jury process, and that under the fourth amendment the grand jury could not require him to provide physical evidence absent a showing of probable cause. The Court rejected his claim.

> "The Fifth Amendment guarantees that no civilian may be brought to trial for an infamous crime 'unless on a presentment or indictment of a Grand Jury.' This constitutional guarantee presupposes an investigative body 'acting independently of either prosecuting attorney or judge,' [citation], whose mission is to clear the innocent, no less than to bring to trial those who may be

guilty. Any holding that would saddle a grand jury with mini-trials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. [Citations.]" *United States v. Dionisio*, 410 U.S. at 16-17, 35 L. Ed. 2d at 81, 93 S. Ct. at 773.

In *In re Grand Jury Proceedings* (3d Cir. 1982), 686 F.2d 135 (*Mills*), the court dealt with the exact issue presently before this court. In *Mills*, the grand jury directed the petitioner to furnish samples of scalp and facial hairs. The petitioner refused to comply with the grand jury's request, unless he was first served with a valid search warrant. The trial court refused to order the petitioner to comply, and the government appealed. Upon review, the court directed the petitioner to provide cut head hair samples and cut facial hair samples. The court noted that the samples sought were on public view. Citing *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, the court pointed out that an individual has no expectation of privacy with respect to that which he knowingly exposes to the public at large, such as voice and appearance. The court felt that the items sought were more akin to fingerprinting and voice exemplars, which have been held outside the ambit of fourth amendment protection.

"[W]e conclude that there is no greater expectation of privacy with respect to hair which is on public display than with respect to voice, handwriting or fingerprints ***. Rather, in terms of intrusiveness, it is more like the involuntary touching, inking, and pressing of one's finger involved in the process of fingerprinting. If the fingerprints can be subject to compelled disclosure by the grand jury without implicating the Fourth Amendment, it follows logically that the hairs stands can as well." *Mills*, 686 F.2d. at 139.

In contrast, the court in *In re September 1981 Grand Jury* (1982), 104 Ill. App. 3d 94, 432 N.E.2d 625, reached the opposite conclusion. In *September 1981 Grand Jury*, the State's Attorney of Sangamon County filed a "Motion for Disclosure to Prosecution." The motion purported to sound under Supreme Court Rule 413 (73 Ill. 2d R. 413). Although no charges had yet been filed, the motion requested that the petitioner, Robert Cohn, provide, among other things, head hair samples to the prosecution. The trial court ordered the petitioner to comply. Upon review, the court ruled that since no charges had yet been filed against the petitioner, the State was without authority to request any information under Supreme Court Rule 413. The court went further, however, and noted that absent a showing of probable cause, the fourth amend-

ment would shield the petitioner from having to provide the State with the items sought. The court reasoned that while head hair may be visible to the public, its unique characteristics are not; "[w]hile the color of one's hair may not be protected, its chemical characteristics are." (*In re September 1981 Grand Jury*, 104 Ill. App. 3d at 98, 432 N.E.2d at 629.) The court felt that by forcing an individual to provide the State with head hair samples, the State was, in effect, forcing the disclosure of chemical characteristics which are both unique and private. We disagree.

Fingerprints are visible to the naked eye, but unless they are properly inked and analyzed, their value as an identification tool is suspect. Much like fingerprints, cut head hair exemplars may be analyzed by scientific means after they are procured by the State. Or, they may be shown to a grand jury for comparison by the naked eye. We feel, however, the two are legally and logically analogous and decline to follow the court's ruling in *In re September 1981 Grand Jury*. We adopt the reasoning of the Circuit Court of Appeals for the Third Circuit in *In re Grand Jury Proceedings* (3d Cir. 1982), 686 F.2d 135.

We find the logic articulated in *Dionisio* and *Mills* persuasive. Although the powers of the grand jury are not unlimited, it has long been the rule in this country that "the public *** has a right to every man's evidence" (8 J. Wigmore, Evidence §2192, at 70 (McNaughton rev. 1961)), except for those persons protected by a constitutional, common law, or statutory exemption. (See *United States v. Bryan* (1950), 339 U.S. 323, 331, 94 L. Ed. 884, 891, 70 S. Ct. 724, 730.) A number of cases have held that the fourth amendment shield cannot be used to prevent petitioners from appearing in an in-person lineup (*Holt v. United States* (1910), 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2), or providing finger and palm prints. (*Mara v. United States* (1973), 410 U.S. 19, 35 L. Ed. 2d 99, 93 S. Ct. 774.) The reasoning behind these cases is that these are traits constantly exposed to the public; "[t]here is no basis for constructing a wall of privacy against the grand jury which does not exist in casual contacts with strangers." (*Dionisio*, 410 U.S. at 14, 35 L. Ed. 2d at 79, 93 S. Ct. at 772.) Unless a person is a recluse, head hair is an item constantly exposed to the public. Permitting a stranger to cut a few strands of one's hair, in our estimation, is not considered a particularly offensive, intrusive, or unusual event in our society.

■ We hold, therefore, the petitioners possess no Federal or State constitutional right which is violated by complying with the court's order to provide head hair clippings and combings. Based upon the doctrine of *stare decisis*, we likewise hold the petitioners must comply with the court's order to appear in an in-person lineup and furnish finger and palm print exemplars.

■ The petitioners need not, however, provide the grand jury with pubic hair samples absent a showing of probable cause. In *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, the Court ruled that the administration of a compulsory blood test plainly involves the fourth amendment. In *Schmerber*, the defendant had been involved in an auto accident and was brought to the hospital. At the hospital, the police noticed the defendant's eyes were glassy and his breath smelled of alcohol. The police placed the defendant under arrest for driving under the influence of alcohol and directed a physician to withdraw a blood sample from the defendant. The defendant refused to consent to this test. At trial, the defendant's motion to suppress the blood test was denied and the defendant was convicted of drunk driving. The Supreme Court affirmed the conviction. The Court noted (1) the officer had probable cause to place the defendant under arrest for an offense, and (2) the percentage of alcohol in a person's blood dissipates over time. Given these special facts, the court ruled the blood was appropriately obtained as a search incident to arrest. The Court's ruling strongly relied on the fact that requiring the officer to obtain a warrant would threaten the destruction of the evidence.

> "We thus conclude that the present record shows no violation of the petitioner's right under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the State's minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." 384 U.S. at 772, 16 L. Ed. 2d at 920, 86 S. Ct. at 1836.

The Court in *Schmerber* made it abundantly clear that the power of the State to intrude upon the body of a citizen is limited. The Court also made it clear that the State, absent exigent circumstances, must seek a warrant from a neutral and detached magistrate before any such intrusion may be made.

> "Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search 'be drawn by a neutral and detached magistrate ***.' [Citations.] The importance of informed, detached and deliberate determinations of the issue whether or not to invade

another's body in search of evidence of guilt is indisputable and great." 384 U.S. at 770, 16 L. Ed. 2d at 919, 86 S. Ct. at 1835.

It is equally indisputable that significant interests of human integrity and dignity are involved in having one's pubic hair combed by the State. Applying the logic of *Schmerber*, it is our estimation of Federal law that absent exigent circumstances, pubic hair combings require the State to first obtain a warrant from a neutral and detached magistrate.

Even if the fourth amendment did not forbid pubic hair combings, we believe our State Constitution would. The Illinois Constitution provides that citizens of this State possess a right of privacy independent of any federally guaranteed rights.

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means." (Emphasis added.) Ill. Const. 1970, art. I, §6.

In *People v. Jackson* (1983), 116 Ill. App. 3d 430, 452 N.E.2d 85, a Cook County grand jury subpoenaed the bank records of the defendant, Hazel Jackson. The bank complied with the subpoena and the defendant was indicted. Prior to trial, the defendant filed a motion to suppress. The defendant claimed the records obtained by the grand jury violated her constitutional right of privacy. The trial court agreed and ordered the records suppressed. The State appealed, arguing that under *United States v. Miller* (1976), 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619, a citizen possesses no Federal constitutional privacy right in bank records. The court agreed with the State's assessment of Federal law, but noted that a State is a sovereign in its own right and may offer its citizens greater constitutional protections than are offered by the Federal Constitution. (See *Cooper v. State of California* (1967), 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788; *Prune Yard Shopping Center v. Robbins* (1979), 447 U.S. 74, 88, 64 L. Ed. 2d 741, 756, 100 S. Ct. 2035.) The court went on to determine that citizens of Illinois possess a constitutional right of privacy in their bank records.

"In reliance upon this express proscription against invasion of privacy in Illinois and influenced by the Commentary, which suggests that this protection should be broadly applied, we are led to conclude that the Illinois [State] Constitution offers protection for the reasonable expectation of privacy which our citizens have in their bank records." *Jackson*, 116 Ill. App. 3d at 434-35, 452 N.E.2d at 88-89.

If citizens of this State possess a right of privacy in their bank records, surely they possess an equal right of privacy in areas of their body

historically thought to be private. As the court in *Jackson* pointed out, however, the fact a citizen possesses a privacy right in an item does not necessarily bar *all* State intrusions. After the threshold inquiry of whether a right exists has been satisfied, the second aspect of the constitutional problem comes into focus; that is, would compliance with the subpoena constitute an *unreasonable invasion* of the protected right. In the case at bar, we believe it would. Certainly, examinations of one's pubic hair for samples and combing violates any reasonable person's standard of privacy. The State seeks to compel the petitioners to submit to State-supervised pubic hair combings, yet there has been no allegation that probable cause exists sufficient to charge either man with a crime or cause a search warrant to issue. If the right of privacy as embodied in the Illinois Constitution means anything, it means a citizen may not be forced to expose his or her pubic areas for inspection and combing by the State on the mere chance desired evidence may be obtained. Absent a showing of probable cause, the interests of simple human dignity forbid such a result.

Accordingly, both portions of the judgment of the circuit court of Will County which require the petitioners to appear in an in-person lineup, provide head hair combings and clippings, and to provide fingerprints are hereby affirmed. That portion of the circuit court of Will County's order which requires the petitioners to provide pubic hair combings and clippings is hereby reversed.

Affirmed in part; reversed in part.

McCUSKEY, J., concurs.

PRESIDING JUSTICE STOUDER, concurring in part and dissenting in part:

I disagree with the majority's decision not to follow the fourth district precedent regarding the issue of the grand jury's power to obtain head hair samples. As in the instant case, in *In re September 1981 Grand Jury* (1982), 104 Ill. App. 3d 94, 432 N.E.2d 625, the fourth district court was presented with a prearrest, precharge situation. The court went through an extensive analysis of the applicable cases, including those relied on by the majority in this case. (See *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826; *United States v. Dionisio* (1973), 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764; *United States v. Mara* (1973), 410 U.S. 19, 35 L. Ed. 2d 99, 93 S. Ct. 774.) The court concluded the United States Supreme Court appeared to have fashioned two exceptions to the fourth amendment protection:

1042

(1) exigent circumstances wherein destruction of the evidence is reasonably apparent, or (2) physical characteristics which may be observed by anyone without a search. The fourth district court stated, "The rule, as developed thus far, appears to be that there is no intrusion, and hence no fourth amendment protection, into an individual's privacy when he is asked to expose to the authorities that which has been previously exposed to the public at large." (*In re September 1981 Grand Jury* (1982), 104 Ill. App. 3d 94, 98, 432 N.E.2d 625, 629.) Applying the relevant case law, the court held that the taking of hair samples does not come within the public exposure exception. I agree with this analysis and see no reason to depart from this precedent. Under the doctrine of *stare decisis*, this court should not depart from established Illinois precedent without good reason. This is particularly true where the ground for refuting the Illinois precedent is a decision of a Federal Court of Appeals, whose decisions are not binding on this court. For these reasons I dissent from that portion of the majority's decision dealing with the grand jury's right to require head hair samples from individuals who have neither been arrested nor charged with a crime.