640 A.2d 1189

STATE OF NEW JERSEY, IN THE INTEREST
OF S.S., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Argued October 27, 1993—Decided May 5, 1994.

Before Judges GAULKIN, D'ANNUNZIO and WALLACE.

*Larry R. Etzweiler*, Deputy Attorney General, argued the cause for appellant State of New Jersey (*Fred DeVesa*, Acting Attorney General, attorney).

*Theresa Yvette Kyles*, Assistant Deputy Public Defender, argued the cause for respondent S.S. (*Zulima V. Farber*, Public Defender, attorney).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

The issue here is whether *N.J.S.A.* 2A:4A–61, a provision of the New Jersey Code of Juvenile Justice adopted in 1982, allows or prohibits the fingerprinting of a juvenile 14 years of age or older charged with delinquency on the basis of an act, which, if committed by an adult, would constitute a crime. We hold that the statute authorizes such fingerprinting.

On April 23, 1992, S.S., then 15 years old, was charged with delinquency for receiving stolen property and theft of a car. The local police fingerprinted S.S. and retained his prints for criminal identification purposes; the charges were apparently dismissed. On October 3, 1992 another automobile was stolen in the same municipality. When it was recovered three days later, the police obtained latent fingerprints from the interior. The prints were compared with those taken from S.S.; both sets were found to be from the same person. S.S. was then charged with delinquency for the second automobile burglary and theft. He moved in the Family Part to suppress the fingerprint evidence, claiming that

the police had no authority to fingerprint him when he was first charged. The motion was granted. We granted the State's motion for leave to appeal and now reverse.

*N.J.S.A.* 2A:4A–61 provides in its entirety as follows:

a. Fingerprints of a juvenile may be taken only in the following circumstances:

(1) Where latent fingerprints are found during the investigation of an offense and a law enforcement officer has reason to believe that they are those of a juvenile, he may, with the consent of the court or juvenile and his parent or guardian fingerprint the juvenile for the purpose of comparison with the latent fingerprints. Fingerprint records taken pursuant to this paragraph may be retained by the department or agency taking them and shall be destroyed when the purpose for the taking of fingerprints has been fulfilled.

(2) Where a juvenile is detained in or committed to an institution, that institution may fingerprint the juvenile for the purpose of identification. Fingerprint records taken pursuant to this paragraph may be retained by the institution taking them and shall be destroyed when the purpose for taking them has been fulfilled, except that if the juvenile was detained or committed as the result of an adjudication of delinquency, the fingerprint records may be retained by the institution.

(3) Where a juvenile 14 years of age or older is charged with delinquency on the basis of an act which, if committed by an adult, would constitute a crime, fingerprint records taken pursuant to this paragraph may be retained by a law enforcement agency for criminal identification purposes.

b. No juvenile under the age of 14 shall be photographed for criminal identification purposes without the consent of the court or of the juvenile and his parent or guardian.

The parties agree that subsection a(3) was the only arguable authority for the police to take S.S.'s fingerprints in April 1992. That subsection should be read, the State says, "as though the third comma were a semi-colon":

a. Fingerprints of a juvenile may be taken only in the following circumstances:
. . . .

(3) Where a juvenile 14 years of age or older is charged with delinquency on the basis of an act which, if committed by an adult, would constitute a crime; fingerprint records taken pursuant to this paragraph may be retained by a law enforcement agency for criminal identification purposes.

S.S. argues, to the contrary, that the statutory punctuation is correct and that a(3) "expresse[s] merely a retention [of fingerprints] authority," while subsections a(1) and a(2) "concern taking [of fingerprints] authority."

The parties first support their respective readings with intricate textual analysis. Acknowledging that the statute "is not a model for legislative draftmanship," the State says that "[t]he problem is largely one of parallelism." The statute purports to define when fingerprints "may be taken," but a(3) "lacks parallelism with the first two subsections" because "it consists of only one" sentence, which "does not contain the verb 'fingerprint'" but rather uses "the verb phrase 'may be retained.'" But that lack of parallelism, the State urges, does not justify the conclusion that a(3) grants only authority to retain fingerprints. Such a reading ignores the statute's introductory phrase that fingerprints of a juvenile "may be taken only in the following circumstances." Further, the noun "paragraph," which appears in each of the three subsections, should be read as the equivalent of "subsection"; since a(3) permits retention of "fingerprint records taken pursuant to this paragraph," that "paragraph" must be read as authorizing the taking of fingerprints. Finally, if a(3) is read solely to authorize retention of fingerprints, it applies only to fingerprints taken under a(1), since a(2) already deals with retention of fingerprints taken thereunder; why, the State asks, would the legislature not simply include an a(3) "retention" authority in the last sentence of a(1)?

S.S. responds with an equally convoluted analysis of what he calls the "plain language" of the statute. According to S.S., the word "paragraph" as used in a(1), (2) and (3) should be read as referring "to the whole of section a," but not section b. S.S. agrees that the "logical place" for subsection a(3) is within subsection a(1), but says there is no conflict between the two subsections because a(3) is "a 'caveat,' or expansion, of subsection a(1)." And, although he acknowledges that the State's parallelism argument "at first glance … has some appeal," S.S. argues that the Legislature surely knew how to use "the active verb 'to fingerprint'" and how to punctuate; accordingly, "it must be presumed that the statute was written, and punctuated, precisely as intended."

■ Either of those competing analyses might be used to justify, but neither could be said to compel, an outcome here. Equally uncompelling is the evidence relied on by the parties concerning the drafting of the statutory language and the ensuing administrative practice. There is no legislative statement or other extrinsic evidence directly explaining the wording or punctuation of *N.J.S.A.* 2A:4A–61; the inferences that might be drawn from the Legislature's response to recommendations proposed in 1980 by the New Jersey Prosecutors' Association and the New Jersey Division of Criminal Justice are conflicting and at best of marginal import. The evidence of the statute's interpretation by law enforcement agencies is fragmentary and anecdotal; in any event, administrative interpretation can only test, not demonstrate, the soundness of a proffered statutory interpretation. *See, e.g., Service Armament Co. v. Hyland,* 70 *N.J.* 550, 563, 362 *A.*2d 13 (1976); *Kingsley v. Hawthorne Fabrics,* 41 *N.J.* 521, 528, 197 *A.*2d 673 (1964).

We find persuasive, however, the history of the legislative handling of juvenile fingerprinting and related matters. The Legislature apparently first addressed the fingerprint issue in 1948, when it allowed the fingerprinting of "[a]ny person of the age of 17 years and under the age of 18 years" charged with an offense that would be indictable if committed by an adult; if the juvenile were acquitted or the charge dismissed, the fingerprints were to be surrendered to the court "upon demand" and thereupon destroyed. *L.* 1948, c. 284, § 2, codified as *N.J.S.A.* 2A:4–21 (repealed by *L.* 1973, c. 306, § 27, effective March 1, 1974). That statute was interpreted as forbidding fingerprints to be taken upon the arrest and charge of a juvenile less than 17 years old. *Oberg v. Department of Law and Pub. Safety,* 41 *N.J.Super.* 256, 124 *A.*2d 618 (J. & D.R.Ct.1956); *cf. In re Fingerprinting of M.B.,* 125 *N.J.Super.* 115, 124, 309 *A.*2d 3 (App.Div.1973).

The authority of law enforcement agencies was expanded by *L.* 1973, c. 306, § 25, effective March 1, 1974, codified as *N.J.S.A.* 2A:4–66 (repealed by *L.* 1982, c. 77, § 33, effective December 31,

1983). First, that statute reduced the permissible age for finger-printing from 17 to 16. Second, it eliminated the provision that fingerprints could be taken only following arrest and charge for an offense that would be indictable if committed by an adult. Third, it permitted retention of fingerprint records following any delin-quency adjudication, not just conviction of what would be an indictable offense if committed by an adult.

*N.J.S.A.* 2A:4A–61, at issue here, replaced the 1973 statute. As interpreted by the State, its subsection a(3) further reduces the age at which fingerprints may be taken, from 16 to 14, but reintroduces the limitation that such fingerprints can be taken only where the juvenile is charged for an act which, if committed by an adult, would constitute a crime; subsection a(3) also autho-rizes fingerprints so taken to "be retained by a law enforcement agency for criminal identification purposes." *Ibid.* S.S. urges, on the other hand, that subsection a(3) does not authorize fingerprint-ing at all, but simply permits retention of fingerprint records taken pursuant to subsection a(1). The effect of that reading is to prohibit law enforcement agencies from fingerprinting juveniles—regardless of their ages or offenses—unless their prints are needed to compare with "latent fingerprints ... found during the investigation of an offense." *Ibid.* We do not believe that was the legislative intent.

Law enforcement agencies were legislatively authorized in 1948 to fingerprint at least some juveniles upon their being charged with certain offenses. That authority was expanded, not reduced, over the years. At the same time, the Legislature introduced a number of other stringencies into the juvenile justice system. In 1977, the Legislature allowed routine disclosure of juvenile records to law enforcement agencies, allowed the identity of a juvenile offender to be disclosed to the victim or a member of the victim's immediate family and allowed the identity of certain juvenile offenders to be disclosed to the public. *L.* 1977, *c.* 255, § 1, effective October 5, 1977, amending *N.J.S.A.* 2A:4–65 and codified as *N.J.S.A.* 2A:4–65b and –65c (repealed by *L.* 1982, *c.* 77, § 33,

effective December 31, 1983). The evolving legislative policy led to the 1982 adoption of the New Jersey Code of Juvenile Justice, *N.J.S.A.* 2A:4A–20 to –91, of which *N.J.S.A.* 2A:4A–61 is a part. An important goal of the Code was "to deal more strictly with serious offenders." *State v. R.G.D.*, 108 *N.J.* 1, 9, 527 *A.*2d 834 (1987). The Code not only "broadened the class of offenders eligible for waiver" and "narrowed considerably" the Family Part's discretion in making waiver decisions, *id.* at 9, 11, 527 *A.*2d 834, but also effected such changes as removing the age limitation for presumptive disclosure to the public, *N.J.S.A.* 2A:4A–60, and lowering from 16 to 14 the age at which the police could photograph a juvenile for criminal identification purposes without prior consent, *N.J.S.A.* 2A:4A–61b. Those all reflect the "concern that the [pre-Code] juvenile justice system had dealt inadequately with serious offenders even as it may have dealt too severely with less serious offenders." *R.G.D.*, 108 *N.J.* at 8, 527 *A.*2d 834.

That evidence of legislative policy compels us to reject S.S.'s reading of *N.J.S.A.* 2A:4A–61a(3). The statute must be read "sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *State v. State Troopers Fraternal Ass'n*, 134 *N.J.* 393, 418, 634 *A.*2d 478 (1993) (quoting *Schierstead v. Brigantine*, 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959)). The Legislature cannot sensibly be regarded as having intended the broad and unprecedented restriction on juvenile fingerprinting urged by S.S. In light of the overall policy of the Code, the reasonable interpretation is that the Legislature intended that the more serious juvenile offenders—those charged with offenses that would be indictable if committed by adults—could be fingerprinted, but those charged with lesser acts of delinquency could not.

That holding moots the State's alternative contention that suppression of the fingerprints was in any event an inappropriate form of relief.

The suppression order is reversed. The matter is remanded to the Family Part for the remaining proceedings.